MOSLANDER *v.* MOSLANDER'S ESTATE.

[No. 16,898. Filed December 22, 1941.]

124

*Delph L. McKesson* and *Marshall F. Kizer,* both of Plymouth, and *Louis Reidelbach,* of Winamac, for appellant.

*Don F. Kitch, Tom R. Huff,* and *Walter A. Wise,* all of Plymouth, and *James Dilts,* of Winamac, for appellee.

BEDWELL, P. J.—The appellant, Jane Moslander, filed a claim against appellee estate for services rendered the decedent, Charles Moslander, during his lifetime. The claim was disallowed and transferred to the civil docket of the Marshall Circuit Court for trial. The claim, after cause was venued to Pulaski Circuit Court, was amended and the appellee estate filed an answer in

three paragraphs, the first in general denial and the second and third affirmative. A demurrer was sustained to the third paragraph of answer of appellee and issues were then closed by a reply of general denial filed by appellant to the second paragraph of answer.

The cause was submitted to a jury for trial and at the close of appellant's evidence the appellee estate filed a motion for a directed verdict. This motion was overruled, but at the close of all the evidence the motion was renewed by appellee and the court instructed the jury to return a verdict for the appellee estate. By her motion for a new trial, which was overruled, the appellant has properly presented for determination the correctness of the trial court's action, and is also seeking to predicate error upon the fact that the trial court sustained an objection of appellee to the introduction into evidence of a certain stipulation of fact made by appellant and appellee.

When a motion is made by a defendant for a directed verdict at the close of the introduction of plaintiff's evidence, or at the close of the introduction of all of the evidence, there are certain well-established legal rules that must be followed by the trial court in acting thereon. First, it must not weigh the evidence for to do so would invade the province of the jury. Second, it must find that upon a material point there is a failure of proof in the evidence of the plaintiff. Third, it must consider only the evidence most favorable to the plaintiff, and it must exclude all conflicting evidence that is favorable to the defendant. In its consideration of the evidence that is favorable to the plaintiff, it must consider as proved all facts that are supported by such evidence, as well as all facts that can be reasonably inferred therefrom. *Kettner* v. *Jay* (1940), 107 Ind. App. 643, 26 N. E. (2d) 546; *Hamble*

v. *Brandt* (1934), 98 Ind. App. 399, 401, 402, 189 N. E.
533; *Monfort* v. *Indianapolis & Cincinnati Traction Co.*
(1920), 189 Ind. 683, 686, 128 N. E. 842.

If a trial court is permitted to weigh the evidence
and direct the action of the jury, when there is conflict
in the evidence or conflicting inferences can
reasonably be drawn therefrom, the right of trial
by jury, which is protected by the Bill of Rights
in both our Federal and our State Constitutions, will
be violated. *Belt R. & Stock Yards Co.* v. *Hammond*
(1919), 71 Ind. App. 151, 124 N. E. 398; *Smith* v.
*Kemerly* (1926), 84 Ind. App. 398, 150 N. E. 65; *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32, 73 N. E.
592, 74 N. E. 613; *Mannos* v. *Bishop-Babcock-Becker
Co.* (1914), 181 Ind. 343, 104 N. E. 579.

The evidence showed the following facts: Jane Moslander, the claimant, and Charles Moslander, the decedent, were husband and wife until the 13th day of
December, 1905, when a divorce decree was rendered
by the Marshall Circuit Court. At that time they were
the parents of Grace Moslander, age eleven years, and
George Moslander, age thirteen years. By the terms
of the divorce decree the claimant was given the custody
of the daughter, Grace, and the decedent was given the
care and custody of the son, George. At the time of
the divorce decree the claimant was living at Plymouth,
Indiana, while the decedent was living on a farm about
five miles northwest of Plymouth. A short time after
the divorce was granted the decedent came to the home
of claimant and took her and the daughter, Grace, to his
farm. From that time in the year 1905, until the death
of the decedent in 1940, with the possible exception of
two or three months, the claimant lived at the home
of the decedent and was there at the time of his death.
During a part of this period the son, George, lived there

and during all of the period the daughter, Grace. During all of the time, the parties lived in or near the City of Plymouth. The claimant and decedent were never remarried; and while she lived at his home subsequent to the divorce, she performed household work, did cooking, washing, milking, and worked in truck patches. Her work was of the reasonable value of ten dollars per week. The testimony produced by the estate showed that claimant and decedent and daughter, Grace, all ate at the same table; that Grace assisted her mother in doing the housework, preparing the meals, and milking the cows; that the mother sold the milk and cream and retained the money as her own, and also retained money that came from the sale of chickens and eggs; that claimant and decedent, after the claimant returned to the farm, slept in the same bedroom; that the decedent furnished the food that was used in the home and when the claimant was ill medicine was procured and paid for by the decedent or by the daughter, Grace; that upon occasions the claimant and decedent went to town together, but they did not go to church or attend any social functions.

There was no evidence of any conversations between the appellant and the decedent, or of any statements by either, from which it could be inferred that the decedent intended to pay for the services rendered subsequent to the divorce, or that the claimant expected to receive any compensation therefor. But the law is firmly established that the intention to pay and the expectation of compensation may be inferred from conduct, where equity and justice require compensation, as well as from direct communications between the parties, or communications through other persons representing them. Intention to pay and expectation of compensation, like other ultimate facts,

may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts or circumstances which may reasonably be said to throw any light upon the question at issue. The right and justice of a claim for compensation, or its wrong and injustice, may be considered in ascertaining the intention and expectation of the parties in relation to compensation for services. *Wainwright Trust Co., Admr.* v. *Kinder* (1918), 69 Ind. App. 88, 120 N. E. 419; *In re Gockel's Estate, Gockel* v. *Gockel, Admx.* (1937), 103 Ind. App. 541, 542, 6 N. E. (2d) 730.

In *Wainwright Trust Co., Admr.* v. *Kinder, supra,* this court disapproved certain prior decisions of this court which placed certain restrictions upon the nature of the proof that was necessary to show an implied contract in cases of this sort. See, also, *King, Admr.* v. *Arnot* (1928), 88 Ind. App. 138, 161 N. E. 571. Such disapproved cases indicated that before the intention to pay and the expectation of compensation could be inferred from the evidence, it must appear from something said by the one for whom the services were rendered to the party rendering the same, or it must appear that statements were made by the party for whom the services were rendered, that it was his intention to pay therefor, and that these statements were communicated to and acted upon by the one rendering the service.

The trial court, by the rules heretofore stated, was prohibited from directing a verdict for the appellee estate, unless the evidence most favorable to appellant was insufficient to show a mutual intention of claimant and decedent to contract for the performance of services. It is clear that there was no express contract. An implied contract, that is a contract implied in fact, as distinguished from a "quasi

contract" or contract implied in law, is defined by Judge Mitchell in *Ramsey* v. *Ramsey* (1889), 121 Ind. 215, 220, 23 N. E. 69, as follows:

"Circumstances may have arisen, or acts may have been done which, according to the dictates of reason and justice, in the ordinary course of dealing, or the common understanding of men, show a mutual intention to contract; in which case an implied contract arises." See, also, Williston on Contracts, Vol. 1, § 3, p. 6; 12 Am. Jur., Contracts, § 4, p. 498, § 6, p. 502.

It is well established that no intention to pay or expectation of compensation for the performance of household services will be inferred where the relationship of husband and wife exists. Section 38-103, Burns' 1933; *Offenbacker, Admr.* v. *Offenbacker* (1934), 98 Ind. App. 689, 187 N. E. 903; *Farmers Loan & Trust Co., Admr.* v. *Mock* (1936), 102 Ind. App. 270, 275, 2 N. E. (2d), 235; *Stout* v. *Perry* (1880), 70 Ind. 501, 504. But here the relationship of husband and wife had ceased to exist. The former wife was no longer entitled to share in any accumulation of property by the former husband. All her property rights growing out of the marital relation had ended and she entered the home of the decedent with the legal status of a stranger. It is true that her own children were there, but the law, ordinarily, cast upon the father the duty to support and maintain the minor children.

After a woman had left the home and divorced a husband because of his misconduct, could it reasonably be expected that she would return to that home and perform labor of the same sort as would be performed by a household servant for a period of thirty-five years, without promise or expectation of compensation? The stipulation of the parties showed that the property of the decedent was of the value of $55,000 at the time

of his death, and the evidence produced at the trial indicated that claimant did not have a fit dress to attend the funeral of her deceased sister. As was said in *Wainwright Trust Co., Admr. v. Kinder, supra,* "The right and justice of the claim for compensation, or the wrong and injustice, if any, attending such claim, may be considered, but only as tending to aid in ascertaining the intention and expectation of the parties in relation to the question of compensation for the services in controversy." Under the circumstances here disclosed, is a court or jury denied the right to draw an inference of mutual intention to contract because the parties lived as though they were members of a common family? A faithful household servant who works under an express contract providing wages for services, often lives as though she were a member of a common family.

In the case of *Witt* v. *Witt, Executrix* (1938), 105 Ind. App. 415, 420, 12 N. E. (2d), 1013, this court says:

"The law applicable to the situation where the person rendering the services and the person or persons for whom the services are rendered are living together as one household and the services rendered grow out of that situation is that there is a presumption that such services are gratuitously performed and the mere rendition of such services and the acceptance thereof will not raise a promise to pay therefor. But this is only a presumption and may be rebutted by the showing of an express contract to pay for same or by showing such circumstances of the service as to manifest clearly an implied agreement to pay therefor."

In the case of *James, Administrator* v. *Gillen* (1891), 3 Ind. App. 472, 475, 30 N. E. 7, this court says:

"Before there can be a recovery for work and labor in any case, there must be established some kind of a contract, either express or implied. No one can be lawfully charged for services performed for him except upon the theory of a promise to pay for such services. Where there is no express agree-

ment, but the services are performed upon the one side and accepted on the other, under such circumstances that reason and justice would dictate that they should be paid for, the law will imply a promise, and permit its enforcement.

"Where the relation of the parties is such that compensation, according to human intercourse, is ordinarily given and received, the law will create a promise to pay. This is generally the case where there appears to be no other adequate motive than the expectation of reward to prompt the performance of the service. But where its performance may be accounted for upon grounds more probable than the hope of pecuniary reward, such as acts of kindness and affection between members of a common family, prompted by a sense of love and duty, no promise to pay will be implied. . . .

"Upon this principle it is universally held in all cases where the family relation exists, whether natural or assumed, in the absence of an express agreement or circumstances from which an agreement may be fairly inferred, that no promise will be created by implication of law to pay for services upon one hand or for support upon the other. This rule of law has its foundation in the theory that the relation repels the legal inference of contract rather than in an implied understanding that the services should compensate, and be compensated by the maintenance.

"It is the policy of the law to inculcate harmony, confidence and affection in the domestic relation, and this can better be accomplished by permitting the sense of filial regard, in a large measure, to regulate the hearthstone economy, than by reducing it to a mercenary basis by applying the rules relating to master and servant. The doctrine applies with peculiar force to parent and child, and those occupying that relation by arrangement or adoption, and continues as long as the relation exists, regardless of the age of the parties."

The principles announced in the quotations are sustained by numerous decisions of this and the Supreme Court. The determination that where the family rela-

tionship exists that no implied promise to pay for services rendered in and about the home will arise merely from the performance and acceptance of such services, is grounded upon the basic fact that according to human experience, and in the ordinary affairs of life, the giving or receipt of compensation for such services is not expected. But where a divorced wife returns to the home of her divorced husband, without remarriage, and performs the work of a household servant, the confidence, affection and cooperative spirit that ordinarily exists between members of a common family would not be presumed to exist. When we apply the information gained by experience in the ordinary affairs of life to such a situation, there is no reason to hold that an inference should be drawn, under such circumstances, that there was no expectation that compensation should be given or received therefor.

In other jurisdictions the question has arisen whether a woman who in good faith lives with a man under the mistaken belief, caused by his fraud, that they are lawfully married, may recover upon an implied contract the value of the services rendered during the period of the supposed marriage. A majority of the cases, and those which we believe are sustained by the better reasoning, allow a recovery in such cases upon the ground that the estate of the supposed husband has been enriched at the expense of the supposed wife, and that equity demands that she be made whole. The implied promise to pay is inferred because justice demands that payment be made. Those cases which deny compensation do so upon the ground that the woman thought she was the wife and that since she performed the services under such belief, she did not perform them expecting compensation therefor. For cases bearing upon subject see: *Estate of Fox* (1922), 178 Wis. 369, 190 N. W. 90, 31 A. L. R. 420; *Sanders*

v. *Ragan* (1916), 172 N. C. 612, L. R. A. 1917B 681, 90 S. E. 777; *Higgins* v. *Breen* (1845), 9 Mo. 497; *Fox* v. *Dawson* (1820), 8 Martin, O. S. (La.) 94 (4 Martin 47); *Emmerson* v. *Botkin* (1910), 26 Okla. 218, 109 P. 531, 29 L. R. A. (N. S.) 786; *Cooper* v. *Cooper* (1888), 147 Mass. 370, 17 N. E. 892.

But there is no reason to conclude, when we consider the evidence favorable to appellant and exclude conflicting evidence favorable to appellee, that the services rendered by appellant were rendered upon a belief that she occupied the position of a wife, or that the same were rendered by her as a wife. It is true that the appellee estate introduced certain items of evidence which tended to establish the fact that claimant and decedent lived as husband and wife when she returned to the home subsequent to the divorce; and evidently the trial court, because of the introduction of such evidence, sustained appellee's motion at the close of all of the evidence, when it had refused to sustain the same at the close of the appellant's evidence. One of the items of evidence so introduced by appellee was the testimony of the daughter that claimant and decedent slept in the same bedroom after she returned to the farm subsequent to the divorce. It might be mentioned that the appellee has not raised any question concerning illegality affecting the implied contract for services. There is no contention by appellee that any illicit relationship existed between claimant and decedent which was a part of the consideration for the performance of household services, and there is no reason to believe that the trial court directed a verdict upon the ground that illegality prevented the enforcement of the implied contract.

We are of the opinion that the trial court should have permitted the jury to pass upon the evidence and that

it should not have withdrawn the cause from its consideration and directed a verdict. The trial court had no right to weigh the evidence and it was required to accept the evidence most favorable to the appellant in passing upon the motion for a directed verdict and to reject all conflicting evidence favorable to the appellee. It is our opinion that the minds of reasonable men would differ as to whether the services of appellant were performed under an agreement by which she was to receive compensation therefor, and under such circumstances a trial court could not properly withdraw the case from the jury and direct a verdict. Where a divorced wife returns to her former home and aids, through a long period of years, in the rearing of the children and the accumulation of a large amount of property by the former husband, by performing valuable services, without any legal relationship which will permit her to inherit or receive any of the accumulated property in the event of his death, we cannot say, if we follow the dictates of reason and justice or the common understanding of men, that a presumption will arise that such services were gratuitously performed. Where such a situation exists it is for the jury to determine, from all the facts, conditions and circumstances, whether the parties intended to contract for compensation therefor.

Appellant contends that the trial court erred in refusing to permit her to read to the jury the following stipulation of facts, namely: "As a statement of facts, it is stipulated and agreed between the parties that at the time of the death of Charles Moslander in August, 1940, his estate was of the value of $55,000.00." To avoid the production of much documentary evidence the parties stipulated before the court that the above was a fact, but there was no agreement that the same

was proper evidence, and when the appellant sought to read the same to the jury, the appellee objected and its objection was sustained by the court.

Appellant is relying upon the case of *Plank, Exr.* v. *Combs* (1926), 84 Ind. App. 446, 448, 151 N. E. 342, where this court said:

> "It is sometimes proper in submitting evidence in support of a claim for services rendered a decedent, to prove the value of the estate. If, for example, there was a controversy as to whether the decedent had agreed to compensate the claimant. In such a case, the evidence is admitted, not to prove the value of the services, but to prove that there was a contract, it being more probable that, having the means, the decedent agreed to remunerate the claimant."

In the particular case the court held that evidence concerning the value of a farm of the decedent was improperly admitted because the only question for determination was the value of the services rendered and such evidence did not tend to show such value.

While evidence of the value of an estate of decedent may, in some cases, be relevant and have probative value in showing whether the parties entered into a contract, or in showing whether the claim was just, we are of the opinion that the trial court did not err in refusing to permit the introduction of the stipulated fact here. It showed a value of decedent's property at the time of his death, but it did not show his indebtedness, nor did it show the value of such property at the time the implied contract was supposed to have been made, which was in 1905, and more than thirty-five years prior to death. Nor was it offered upon the theory that it tended to establish the justice of appellant's claim, for no attempt was made to show the amount the claimant had received during the period of thirty-five years, or to show any connection between

the estate of $55,000 left by decedent and the services rendered by claimant. Because of the state of the record, we hold that the trial court did not err in sustaining an objection to the offered stipulation.

Because of error of the trial court in directing a verdict, the judgment is reversed and cause is remanded to the trial court with direction to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 38 N. E. (2d) 268.