JOHNSON *v.* ESTATE OF GAUGH ET AL.

[No. 18,573.   Filed March 2, 1955.   Rehearing denied March 31, 1955.   Transfer denied June 14, 1955.]

*Jerrald O. Finney, C. D. Rotruck,* of Anderson, for appellant.

*Harold J. Anderson, Ralph F. Mattingly, John D. Staggenburg,* of Anderson, for appellees.

KELLEY, C. J.—Appellant filed his first amended claim against appellees for specified services of the alleged reasonable value of $45,000.00 allegedly performed by appellant for the decedent, Ida M. Gaugh, and her husband, George Gaugh, now deceased, from August, 1946, to March, 1951.

The claim, denied by appellees' statutory answer, was submitted to a jury for trial. At the conclusion of appellant's evidence, the court, upon appellees' motion,

directed a verdict for appellees. Upon the jury's verdict in favor of appellees, the court rendered consonant judgment.

Appellant assigns as error the overruling of his motion for new trial. His second assignment charging error in directing the verdict for appellees is also contained in his motion for new trial and will be considered with the other specifications in said motion.

The motion for new trial contains 9 specifications, but in view of the conclusion we have reached it is necessary to consider only specifications 2 and 3.

Said specifications 2 and 3 may be considered together and count upon alleged error of the court "in directing the jury to return a verdict for defendant at the conclusion of plaintiff's evidence herein." The peremptory instruction, if any, is not found in the record. Appellees, in their brief, state that "this instruction was in writing . . ." Appellant, in his reply brief, says: "The instruction to the jury was oral. . . . There was no means of identifying . . . the instruction except that employed by appellant in his new trial motion."

The pertinent part of the order book entry, as shown by the transcript, is as follows:

"The defendant's motion for directed verdict dictated to the reporter, and the motion is sustained. The jury is directed to find for the estate. The jury returns in open court the following verdict, 'We the jury find for the estate.'"

Rule 1-7 provides, in part: "The court's action in directing or refusing to direct a verdict shall be shown by order book entry. Error may be predicated ■ *upon such ruling* or upon the giving or refusing to give a written instruction directing the verdict." (Our emphasis.) Under the stated provisions of said rule, we think that said specifications 2 and 3

of appellant's new trial motion require us to consider appellant's claim and the evidence and permissible inferences tending to sustain it, and thereby determine the correctness of the court's direction to the jury to find for the appellees.

It seems unnecessary at this time to restate the conditions and circumstances under which the trial court may properly direct the jury to find for the defendant. The Supreme Court, in the recent case of *Whitaker, Administrator, etc.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, enunciated and restated, in concise manner and with extensive citation of supporting authorities, the fundamental and well established rules and principles for the guidance of trial courts in determining upon a motion for a directed verdict.

Appellant's first amended claim alleged that from August, 1946 to March, 1951, he performed services for decedent and her husband. The itemized services were: (a) Hauled in coal; (b) Purchased groceries; (c) Put up storm windows; (d) Picked fruit for canning; (e) General labor around home of decedent; (f) Helped decedent care for invalid husband; (g) Served legal papers on tenants of decedent; ((h) Repaired and serviced automobile of decedent and her husband.

The claim also alleged, in substance, that claimant was in home of decedent and her husband continuously from the summer of 1946 until the spring of 1951, and that during this period he rendered all the services which they required. It was further alleged that decedent informed and promised claimant that she would give him a sack of jewelry, certain real estate, and make him beneficiary of certain U. S. Bonds. However, a careful examination of the evidence discloses none to support the claim of the alleged promised jewelry, real estate, and bonds.

The record discloses evidence presented by appellant, as follows:

The decedent, Ida Gaugh, died June 21, 1952, and her husband, George Gaugh, predeceased her on March 2, 1950. They were an elderly couple, the evidence, although indefinite, indicating that George was around 80 years of age at the time of his death, and that Ida was a few years younger. Their only heirs were first, second and third cousins. Appellant was born in the immediate neighborhood of the said Gaughs, who lived at 2116 Pearl Street, Anderson, Indiana. They, decedent and her husband, "spoke very highly" of appellant and "thought a lot of him." Mrs. Gaugh repeatedly said: "Walter (meaning appellant) is my boy."

Lloyd Rector and Lenora, his wife, lived on a farm, three miles east of Alexandria, Indiana, as tenants of Mr. and Mrs. Gaugh on a "fifty-fifty" basis from 1944 to March of 1948. During 1946 and 1947 Mr. Gaugh came out to the farm in his automobile to see Mr. Rector about the farm business, usually on Sunday of each week. Mr. Rector testified that Mr. Gaugh did not always drive the automobile himself and when he did not, the appellant brought him out; that appellant drove him out to the farm several different times; that in 1947 the number of times Mr. Gaugh drove out himself and the number of times appellant drove him out were about even; that in 1947 Mr. Gaugh's health failed and Mr. Gaugh was better off with someone driving than doing his own driving; that in 1948, prior to the time Mr. Rector moved in the middle of March, appellant brought Mr. Gaugh out two times that he (the witness) remembered of.

Mr. Rector further testified that in 1947 Mr. Gaugh's failing health affected his ability to do normal work; that he had a heart condition and his feet and legs would

swell; that appellant helped Mr. Gaugh in and out of the automobile so that he, Mr. Gaugh, would not fall. Another witness, Gladys M. Layton, testified, by deposition, that she remembered that Mrs. Gaugh said appellant was to take Mr. Gaugh to the farm, and that he did that several times.

Mr. Rector continued to relate that he went to the Gaugh home in Anderson once a month to make the monthly settlement and that one time when he was there, appellant was there and had gotten in the coal and looked after the fires; that in 1947 when he was there (at Gaugh's home) Mr. and Mrs. Gaugh talked about appellant and said that he (appellant) came down evenings and got their coal in and more or less looked after the fires,—"odds and ends, you might say," that needed to be looked after in the evenings.

Mrs. Rector stated, in her testimony, that Mrs. Gaugh told her that appellant got in the wood and coal for them and that in the evenings he (appellant) would come home from work and come over and get in the coal and wood. The witness further said that the Gaugh home consisted of four rooms downstairs and hallway, big pantry off kitchen, serving room, bath room and two rooms upstairs; that to her (witness) knowledge there was no part of said house that was not heated in the wintertime. In addition, the witness stated that when Mrs. Gaugh said "Walter (appellant) is my boy," it indicated to her (witness) that claimant was good and kind to them (the Gaughs).

Mr. Rector also testified that eviction papers were served on him by Mr. Gaugh and that appellant brought him out, while Mrs. Rector said that legal papers were served on her by George (Mr. Gaugh) and Mr. Johnson (appellant).

Two witnesses, Fred Brooks and Harry Swain, tes-

tified as to work done by appellant on Mr. Gaugh's automobile in 1948 which consisted of installing spark plugs, points and thermostat. Witness Brooks said that in the course of a conversation between Mr. Gaugh, Mrs. Gaugh, Mr. Swain and himself, Mrs. Gaugh walked over and put her arms around Walter (appellant) and said: "Don't worry about Walter. Anything he says on the car is all right with me. He is my boy."

Mr. Brooks, previously referred to, further testified, in answer to a question as to whether anything was said about pay for appellant, that Mr. Gaugh said to Mrs. Gaugh, "Don't you think we should pay Walter (appellant)?" and Mrs. Gaugh said, "Walter will be well paid." Later, the witness stated that Mrs. Gaugh's words may have been to the effect, "Walter will be well paid some day." Mr. Swain, above mentioned, testified that Mrs. Gaugh said that Walter was her boy and "she would see he was taken care of," and that Mrs. Gaugh said something to the effect that "Walter really helps me and George out. If it were not for Walter I don't know what we would do."

Several witnesses testified to having seen appellant around the Gaugh home during 1946 or 1947, and until the death of Mrs. Gaugh, the number of times being indefinite, although one witness said it would be one or two times every two weeks.

Evidence was introduced that the value of the service of hauling in coal, going to town and taking people where they wanted to go in their own car is $3.00 to $5.00 per hour, and that the reasonable value of labor on a Studebaker automobile (the kind owned by Mr. Gaugh) is $4.00 per hour.

Appellees assert that on this appeal we will consider only the evidence most beneficial to them. This conten-

tion cannot be sustained. This is an appeal from a judgment rendered on a verdict in favor of appellees which was directed peremptorily by the court at the conclusion of appellant's evidence. In such case the trial court and the appellate tribunal must consider as true all facts which the evidence tends to prove and draw against the party requesting such direction, all inferences which the jury might reasonably draw. *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, *supra; Bennett* v. *Chicago I. & L. Ry. Co.* (1912), 50 Ind. App. 264, 98 N. E. 192, 193.

Appellees contend that there is no evidence that services were rendered at the request of decedent. There is evidence in the record to support an inference that decedent assented to receiving the benefit of the services rendered and from such inference the request for the services may be implied. To entitle one to recover on an implied contract for services, there must be evidence that defendant requested plaintiff to render the services, *or assented to receiving their benefit,* under circumstances negativing any presumption that they were gratuitous. *Western Oil Refining Co.* v. *Underwood* (1925), 83 Ind. App. 488, 149 N. E. 85. (Our emphasis.) There is no evidence of any blood or family relationship between appellant and the decedent and, therefore, there exists no presumption that any services rendered by appellant were gratuitous.

Appellees further contend that there is no evidence that any services were rendered to Ida Gaugh after the death of her husband and, therefore, her estate would not be liable for any services rendered to her husband. There is evidence and legitimate inferences therefrom that Mr. and Mrs. Rector were farm tenants of decedent and her husband on a crop-sharing basis and that Mr. Gaugh's Sunday trips to the farm were

made in connection with the farm business. There is further evidence that on some of those trips appellant drove Mr. Gaugh's automobile for the purpose of getting Mr. Gaugh out to the farm, and that in 1947 the latter was laboring under a heart condition, swollen feet and legs, and, as the witness put it, he (Mr. Gaugh) was better off with someone driving than doing his own driving. There is evidence, also, that appellant served or assisted in the serving on said tenants eviction notice and legal papers. Further, there is evidence that appellant on one occasion did some mechanical work on Mr. Gaugh's automobile which was used to make the farm trips; and evidence that appellant came down in the evenings and got their (Mr. and Mrs. Gaugh's) coal in and looked after the fires for the Gaugh home.

From such evidence the jury could have reasonably concluded that appellant's services were for the benefit of both the decedent and her husband and that the decedent recognized such servces and made statements to the effect that she would see that appellant was taken care of and that he would be well paid some day. A married woman can bind herself to pay for personal services rendered to herself and her husband, and one rendering such services can recover from the wife's administrator for services prior to the husband's death. *Minnis* v. *Steele* (1921), 79 Ind. App. 45, 132 N. E. 702.

Lastly, appellees contend that there is no evidence of an express or implied promise by decedent to pay. Whether appellant's services were rendered under an express or implied contract for pay was a question for the jury and, in this connection, it was stated in *Richmire, Adm'r.* v. *Deardurff* (1927), 86 Ind. App. 31, 155 N. E. 720, 721, that "Where the services are performed by one not a member of recipient's

family, an agreement to pay may be implied from the mutual relations, the situation and conduct of the parties, and from the nature and character of the services rendered." See, also, *Winston et al.* v. *Kirkpatrick* (1941), 110 Ind. App. 183, 37 N. E. 2d 18, 20.

That some of the items of service alleged in appellant's claim are unsupported by any evidence is not a matter for our attention. The trial court may and should withdraw from the consideration of the jury such specific items of the claim as he may determine have no foundation in the evidence.

We are not concerned with whether the evidence, as appellees assert, was "weak evidence." Our only concern is whether there is some evidence or legitimate inferences supporting the material allegations of appellant's claim. The weight, convincing nature, extent and value thereof is for the jury.

We think there is some evidence and permissible inferences in support of the material allegations of appellant's claim.

The judgment is reversed with instructions to sustain the motion for a new trial, and for further proceedings consistent herewith.

NOTE.—Reported in 124 N. E. 2d 704.