VANN *v.* VERNON GENERAL INSURANCE COMPANY

[No. 18,678. Filed March 20, 1956. Rehearing denied May 24, 1956.]

504

*Anderson, Hicks & Anderson, F. L. Anderson, Sr., F. L. Anderson, Jr.,* of Gary, *Snyder & Jacobs* and *Karl M. Jacobs,* of Fowler, for appellant.

*Draper & Eichhorn,* of Gary, and *Fraser & Isham,* of Fowler, for appellee.

KELLEY, J.—In this action the appellant sought to recover of the appellee insurer, on a collision policy issued to the former by the latter, an amount claimed to be the entire value of the insured's automobile. Appellee put the complaint at issue and filed an amended third paragraph of answer averring that it had made an election to repair under the policy, had repaired the

automobile, and thereby satisfied the policy agreement. The reply denies said answer and alleges that the automobile had not been repaired in accordance with the provisions of the policy.

The issues thus made were submitted to a jury for trial. At the close of appellant's evidence the court directed a verdict for the appellee. Consistent judgment followed and appellant appeals therefrom, charging that the direction of said verdict was erroneous.

The court directed the verdict apparently upon the theory, as urged by appellee, that there was no evidence that the accident resulted in the total loss of the automobile.

There was evidence tending to establish the following material and pertinent facts: On or about August 19, 1950, while appellant's automobile was properly parked on the highway, another automobile collided therewith, knocking the parked automobile back some 300 feet and turning it around. The police department removed it to the Fifth Avenue Ford, Inc., referred to as the Ford agency and garage. The automobile was a 1948 Packard which appellant had purchased new from the Tri-City Motors, Inc., a Packard agency. Later appellant went to the Ford garage and told them he wanted the automobile taken to the Packard garage. He was advised by the Ford agency that the "insurance people wanted them to do the work." Later appellant went to the Ford garage and inquired concerning what they were going to do and he was informed that they were taking the frame of the automobile to a frame shop and have it fixed. Appellant objected on the ground that the frame couldn't be fixed without replacing it, to which it was rejoined that to replace the frame would "cost more than the car is worth." Upon being advised that the car was ready, appellant and others took it out

upon the highway but after proceeding a block or so it failed to function and was towed back to the garage.

Appellant conversed with appellee's adjuster on several occasions, insisting that the automobile would not be as it was without a new frame, but the adjuster advised that "The Insurance Company said they will not put in a new frame, that a new frame would run about $2,200.00 and that was more than the car was worth;" and that "This $279.81 estimate is as far as the company will go, they will not put in a new frame." Appellee did not put in a new frame.

The automobile would not be in a safe operating condition without a new frame. Its value prior to the collision was $2,100.00 and after the collision it had a salvage value of $350.00 to $400.00. Since the collision appellant has not had possession of the automobile and, at the time of his testimony on October 1, 1954, he did not know where it was.

It is a familiar rule that in considering the appropriateness of a directed verdict, the court must accept as true all facts which the evidence tends to prove and draw, against the party requesting such instruction, all inferences which the jury might reasonably draw, *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, and the court is not authorized to weigh conflicting evidence even though the conflict may appear between the direct examination of the witness and his cross-examination. *Tarnowski* v. *Lake Shore and Michigan Southern Railway Company* (1914), 181 Ind. 202, 209, 104 N. E. 16; *Moslander* v. *Moslander's Estate* (1941), 110 Ind. App. 122, 126, point 1, 38 N. E. 2d 268.

A fair consideration of the evidence, surveyed in the light and within the boundaries of the stated applicable

legal principles, convinces us that there is evidence tending to support the material averments of the complaint. There is evidence, also, we think, bearing directly upon the issues raised by appellee's amended third paragraph of answer and the reply thereto from which the jury might have found that appellant's automobile had not been repaired and the policy agreement fulfilled, as claimed by appellee in its said answer.

One of the cherished constitutional rights of the American citizen is that of trial by jury. Our courts are charged with the duty of preserving that right. Thus it has been decreed that in a civil case where the issue rests upon inferences and deductions to be drawn from facts proved, if there be any evidence, upon the essential issues, in favor of the party against whom a directed verdict is moved, such motion will be denied.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

## ON PETITION FOR REHEARING

Kelley, J.—Appellee, plying its rehearing petition with intense earnestness and persuasive logic, urges that the policy of insurance involved in this action contained a requirement that "written" notice of accident and "sworn" proof of loss be filed by the insured with the appellee before action could be maintained on such policy, and that "there was utterly no evidence of any attempt to comply with that requirement".

Such contention, presently urged, found no place in appellee's brief and no utterance thereof was heard in the argument. However, if such point was made in the trial court or the attention of said court was directed thereto by appellee's motion for a directed

verdict, we would be inclined, in the interest of justice, notwithstanding our usual position as exemplified in *Funk, Guardian, et al.* v. *Rentchler, et al.* (1892), 134 Ind. 68, on page 75, 33 N. E. 364, to pause for an appraisal of the assertion. Appellee gives us no citation to the claimed policy provision, but says that it was presented in its motion for a directed verdict, and cites us to page 73 of appellant's brief.

A reference to that citation discloses that the closing paragraph of the Memorandum to Appellee's Motion for Directed Verdict recites:

> "That there is no evidence that the plaintiff, if at all entitled to recover under the policy set forth in his complaint, has performed *any of the conditions* required of him to be performed upon the damage sustained to his automobile". (Our emphasis).

A perusal of the policy reveals several pertinent conditions other than the one referred to. The quoted portion of appellee's motion does not point out any particular condition alleged to have been unperformed by appellant but refers to the conditions of the policy generally. In the absence of briefs or argument pointing out the particular unperformed condition of the policy complained of, we hardly conceive it to be the assigned task of our court to search out the different conditions expressed in the policy and painstakingly sift all the evidence to find if performance of each condition has been established thereby. If such be our duty, then, indeed, would our required efforts be of herculean proportion and equal consideration of pending appeals would be impossible.

The only coverage of the policy applicable to the claimed loss in this action is that designated in the policy as "D-1 Collision or Upset". Under Condition 12

of the policy pertaining to coverage D-1, notice of loss by the insured is not required to be in writing. It is therein stipulated that "When loss occurs, the named insured shall . . . (b) give notice thereof as soon as practicable to the company or any of its authorized agents . . .". The evidence discloses that appellant informed the insurance agent, Mr. Rothschild, within an hour after the collision occurred and the latter said he would report it to the adjuster. The adjuster, Harold D. Florey, testifying as a witness called by appellant, stated that the accident was reported to him immedately after the accident. Such evidence, we think, tended to show that appellant gave notice of loss as provided for in the policy and was proper for the consideration of the jury on that question.

Clause (c) of said Condition 12, of said policy provides that when loss occurs, the insured shall "file proof of loss with the company within sixty days after the occurrence of loss . . . in the form of a sworn statement of the named insured", setting forth therein certain specified information. Said condition of the policy is one that may be waived by the insurer. *Home Insurance Company* v. *Day* (1929), 90 Ind. App. 128, 129, 168 N. E. 464; *Aetna Insurance Company* v. *Shryer, et al.* (1882), 85 Ind. 362. Such waiver may be established by a course of conduct on the part of the insurer and the question of such waiver is for the jury. *Home Insurance Company* v. *Day, supra; Providence Washington Insurance Company* v. *Wolf* (1907), 168 Ind. 690, 80 N. E. 26.

There is evidence in the record from which the jury, we think, could have found that appellee waived strict compliance with the proof of loss provision above referred to. The evidence reflects that the insurance agent was notified of the occurrence

within an hour thereafter and said agent informed appellant that he would "report it to the adjuster". It was immediately reported to the adjuster representing appellee, who examined the automobile. The Fifth Avenue Ford garage was authorized by appellee to "take over and fix" the automobile. Appellee then "Proceeded along the normal procedure, obtaining estimates, *after we obtained the report as to how the accident occurred,* we obtained estimates to find the extent of the damage". Discussion was had by appellant with the adjuster as to the "way the frame was repaired". Appellant had several conversations with the adjuster, in the course of which appellant complained that the automobile "wasn't going to be right, they wasn't putting this new frame in" and the adjuster said that "the Company told me to tell them to go ahead and fix the car" and, on several occasions after that, told appellant that "they" had authorized him "again" to tell the "Fifth Avenue Ford" to go ahead. That the insurance agent, adjuster, and appellant together went over to the "Fifth Avenue Ford". That the adjuster had made a report to appellee that he had placed the automobile with the "Ford Motor people". The automobile was reported ready by the garage, but when taken out on the highway it failed to function properly and had to be towed back to the repair shop. Appellant maintained that the automobile would not be as it was without a new frame which appellee refused to furnish on the ground that the cost thereof "was more than the car was worth". Appellee's adjuster went with appellant to the Ford garage when the latter gave notification that the car was ready and also went with appellant to the Tri-City Motors to make a further inspection. The adjuster also assisted in securing estimates of the damage to the automobile and told appellant that "This

$279.81 is as far as the company will go". The evidence also tends to disclose that appellant has not had possession of his automobile since the collision in August, 1950, and the removal of the automobile to the garage and does not know where it is.

Evidence of less force was held to establish waiver in *Ringo* v. *Automobile Ins. Co. of Hartford, Conn.* (1933), 143 Ore. 420, 22 P. 2d 887, annotated in 105 A. L. R. 1439. It appears from the testimony of the adjuster that he represented the appellee. He, therefore, had authority to waive the proof of loss, *Aetna Insurance Company* v. *Shryer, et al., supra; Providence Washington Insurance Company* v. *Wolf, supra; The Prussian National Insurance Company* v. *Peterson* (1902), 30 Ind. App. 289, 64 N. E. 102. The provision of the policy that "Notice to any agent or knowledge possessed by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy . . . except by endorsement issued to form a part of this policy, signed by an executive officer of the company" does not refer to stipulations requiring the assured to make proof of loss in a special manner but refers to conditions essential to make the contract obligatory and binding between the parties in the first instance, and to its continuing force and obligation till loss occurs. *Ohio Farmers Insurance Company* v. *Glaze* (1913), 55 Ind. App. 147, 101 N. E. 734.

It appears from the evidence that the appellee would "go" to the amount of $279.81 in adjusting the appellant's loss. In *Providence Washington Insurance Company* v. *Wolf, supra,* the court adopts the language: "If the insurer offers to pay what he thinks has been the amount of the loss of the insured, and is rejected by the latter, this implies that the in-

surer is satisfied of the integrity of the loss. It implies further that he will not require proofs of loss, but will pay the amount ascertained by the arbitrators. . . . Negotations or proceedings by the company with reference to settlement of loss will be a waiver of failure to give notice or make proofs of loss, and proceedings to adjust the loss in the usual way will waive objection on account of defects in the proofs or failure to furnish proofs as required by the policy." We consider, therefore, that appellee's late contention that the court was authorized to direct the verdict on the ground of the failure of the evidence to show submission to appellee of a sworn proof of loss, is not well taken.

Appellee also asserts that this court erred in not giving proper attention to paragraph 14 of the insurance policy in question which provided for the appellee's option to repair or restore the damaged automobile. Such provision of the policy is as follows:

> "14. Limit of Liability; Settlement Options; No Abandonment—Coverages D-1, D-2, D-3, E, F, G, H, I and J: The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is a part thereof the actual cash value of such part, at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality with deduction for depreciation, nor the applicable limit of liability stated in the Declarations.

> "The company may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the company".

It will be noted that in the original opinion we said:

"There is evidence, also, we think, bearing directly upon the issues raised by appellee's amended third paragraph of answer and the reply thereto from which the jury might have found that appellant's automobile had not been repaired and the policy agreement fulfilled, as claimed by appellee in its said answer."

Such answer filed by the appellee raised an issue to the trial court by the words thereof as follows: "That said defendant company elected to repair said automobile, did cause the same to be repaired, and thereby satisfied and fulfilled the agreement contained in said policy". Appellant's reply to said answer closed the issue raised thereby and, in addition, posed an issue as to whether the repairs were of such kind and quality as to constitute an election under the policy.

The appellee concedes in its brief on petition for rehearing that there is some evidence that the car was not satisfactorily repaired. Such evidence in the record on the issues presented by appellee's answer and appellant's reply thereto would present a question for the jury's determination as to such issues, and an examination of the record discloses that not only did the appellee by its said answer tender the issue that an election had been made under its policy and that the contract to repair had been performed, but, in addition thereto, the appellee permitted the appellant, without objection, to introduce evidence tending to show that there was a failure to repair within the provisions of said Condition 14 of the policy.

A far different question would have been presented to the trial court and to this court on appeal had the appellee taken proper steps to confine the issues and the evidence to the allegations of the complaint which

sought to recover on the policy of insurance rather than on an implied contract to repair.

The policy makes no provision as to the manner in which and the time when the election must be made by appellee. It provided for no notice to appellant of the election or exercise of the option by appellee and the evidence reveals no notice of election given by appellee to appellant. See 46 C. J. S., Insurance, Sec. 1195b. and d. (2), pages 130, 131, 132 and 133. Therefore, it seems clear that a question for the jury was presented by the pleadings and the evidence on (1) whether an election had been properly made, and (2) whether the contract to repair had been performed by the appellee. In denying the jury the right to consider and determine such issues, the court, we think, committed error.

Petition for rehearing denied.

NOTE.—Reported in 133 N. E. 2d 70. Rehearing denied, 134 N. E. 2d 235.