ANDREWS, ADMINISTRATOR, ETC. *v.* FARTHING.

[No. 19,280. Filed June 12, 1959. Rehearing denied October 14, 1959.]

*Charles H. Foley,* of Martinsville, for appellant.

*Phillip J. Badell,* of Rushville, *Sam Blue* and *McNutt, Hurt & Blue,* of Martinsville, for appellee.

SMITH, J.—Appellee, Sylvia A. Whitney Farthing, filed a claim for services rendered appellant's decedent, Flossie Whitney. Appellee's claim omitting the caption, signature and verification reads as follows:

"ESTATE OF FLORENCE W H I T N E Y, DE-CEASED TO S Y L V I A A. W H I T N E Y FARTHING, DR. FROM 1941 to 1944

Caring for, waiting upon, cooking, washing, mowing lawns, house keeping, nursing care for decedent at her special insistence and request upon a contract to pay claimant said services at the rate of $40.00 per week $6,240.00"

The claim of the appellee was the only pleading filed,

and upon trial to the court a finding and judgment was rendered in favor of the appellee in the amount of $1,560.00. From this judgment an appeal was taken.

The appellant's defense was (1) the claim was barred by the statute of limitations, (2) the decedent was of unsound mind and under guardianship and incapable of contracting, (3) the services rendered in the life time of decedent's husband was the marital obligation to support and maintain his wife, and (4) payment of the claim.

The appellant assigned as error the overruling by the Court of appellant's motion for a new trial, which motion contains the following three specifications:

(1)  The decision of the Court is not sustained by sufficient evidence;

(2)  The decision of the Court is contrary to law; and

(3)  The decision of the Court is not sustained by sufficient evidence and is contrary to law.

The principal contention of the appellant is that the claim was based on a contract to pay for services performed by the appellee for the appellant's decedent from a period of 1941 to 1944. That the decedent died on May 28, 1956, a period of twelve (12) years having elapsed since the services were rendered. That there was no attempt on the part of the appellee to plead around the statute of limitations or to prove anything different than a claim in quantum meruit for the reasonable value of services. That there was no evidence of any specific contract and none in writing alleged or proved, and therefore the contract, if any, must rest in parol. That the claim of the appellee was insufficient on its face, disclosing that the statute of limitations barred recovery, and therefore there can be no recovery against the estate as a matter of law.

It would appear that the validity of the judgment rests upon whether or not the evidence establishes facts and circumstances which show either the existence of an express contract, as alleged in the claim, or establishes facts and circumstances from which the court could find an implied contract for the rendition of services and an agreement to pay therefor. This would, of course, include proof of the rendition of services by the appellee to the appellant's decedent with the expectation on the part of the appellee for the payment thereof; and proof of the acceptance of such services by the appellant's decedent under circumstances showing a reasonable intention on the part of the appellant's decedent to pay for such services, and the reasonable value of such services.

The record evidence tends to establish the following facts and circumstances:

The appellee, Sylvia A. Whitney Farthing, a niece of Clyde Whitney, went to the household of Flossie and Clyde Whitney, in the latter part of 1941 and remained there continuously for a period up to and including the year 1944. There is undisputed evidence that from 1941 to 1944 the appellee p e r f o r m e d Whitney, such as the preparation of meals, laundry work, tending a garden, mowing the lawn, carrying in coal for the stoves, general house work, caring for the chickens, painting the exterior of the house, and performing necessary nursing services for Flossie Whitney.

Robert B. Owens, a neighbor of the Whitneys, offered the following unrefuted testimony: He said that he was a frequent visitor at the Whitney home and that he had the opportunity to observe the appellee and the services performed by the appellee in the numerous and various services for Flossie and Clyde

Whitney household during such visitations. The witness was then asked the following questions and he made the following replies thereto:

"Q. Will you relate to the Court what Flossie Whitney said to you concerning Sylvia Whitney and the help she was giving around the house . . .

"Q. Was this in the presence of Sylvia Whitney?

"A. That was in the presence of Roy Chapman, Flossie Whitney and Sylvia Whitney and myself . . .

"A. *Well, in good moments I have heard her a couple of times, she said she did not know what she would do without Sylvia and one of these days when she and her husband passed on Sylvia would be taken care of.*

"Q. Did you hear that on just this one occasion?

"A. *I heard her speak of that twice and I heard Clyde say the same thing.*

"Q. After the conversation that you have just related did Sylvia Whitney continue to stay at the Whitney house-hold?

"A. Yes."

"Q. And while she stayed there to your knowledge did she continue to do the work you have just related in your previous testimony?

"A. Yes."

On re-direct examination the witness, Robert B. Owens, was asked the following question and he made the following reply:

"Q. Now at the particular occasion when she (Flossie Whitney) made these statements and Clyde made these statements, what would you say her mental health was at that time?

"A. It was one of the times when she was in good mental health."

There was evidence offered by witnesses concerning the value of the services performed by the appellee.

One witness said that the reasonable value for such services was $50.00 per week, another witness said that the reasonable value of such services was $30.00 to $35.00 per week, and another witness said that the reasonable value of such services would be $6.00 per day, or $40.00 per week.

The evidence was undisputed as to the fact that the appellee lived with the Whitneys up until the death of Mr. Whitney on January 6, 1943, and that she continued to live with and care for the appellant's decedent, Flossie Whitney, up to and including some time in the year 1944.

It is the opinion of this Court that the unrefuted evidence presented by the appellee establishes facts and circumstances from which the trial court could logically and legally find the existence of an implied contract for the rendition of the services performed by the appellee and the acceptance of such services by the appellant's decedent, and the existence of an implied agreement on the part of the appellant's decedent to pay for such services.

The contention of the appellant that the claim of the appellee was barred by the statute of limitations depends upon when the claim for services accrued. It is the opinion of this Court that the evidence clearly establishes the undisputed fact that the claim did not accrue until the death of Flossie Whitney, and therefore the claim was not tolled by the statute of limitations. In *Schoonover* v. *Vachon et al.* (1889), 121 Ind. 3, 22 N. E. 777, the facts are similar to the facts as disclosed by the evidence in this cause. In the Schoonover case Vachon and his wife filed a claim against the estate of Freeman King. The claim alleged that the decedent, King, agreed with the claimants that if they would live with him and his wife and help work

on the farm which King owned, and take care of him and his wife when they needed care during their natural life, that he (King) would devise to claimants his farm, to be theirs after the death of himself and his wife. This case proceeded upon the theory that the compensation was to be made to the claimants for their services after the death of King and his wife. The court held that the claim did not become due until the death of King and his wife, and that the statute of limitations did not, therefore, bar the claim, suit having been brought within six (6) years from the date of the death of the survivor. The statute of limitations does not begin to run where a contract requires a continuing service by one party, until the engagement has been completed.

In the case of *Logan* v. *Hite* (1938), 214 Ind. 233, 13 N. E. 2d p. 702, the court had this to say about a debt payable on a debtor's death: "A debt payable on the death of one of the contracting parties may be asserted as a claim against his estate. In such a case the statute of limitations does not begin to run until the death occurs," citing *Ohio Farmers' Insurance Co.* v. *Dobbs* (1920), 74 Ind. App. 685, 126 N. E. 869.

As to the contention of the appellant that the decedent was incapable of contracting, there is nothing in the record to indicate that the decedent had ever been judicially declared to be incompetent prior to the time the decedent made the statement "that she did not know what she would do without Sylvia, and one of these days when she and her husband passed on Sylvia would be taken care of." The law indulges the presumption of competency until judicially declared otherwise. *Hardenbrook et al.* v. *Sherwood, Guardian* (1880), 72 Ind. p. 403, 407; *Monnier* v.

*Central Greyhound Lines, Inc., et al.* (1955), 125 Ind., App. 672, 676, 129 N. E. 2d 800.

Appellant further contends that the services rendered by the appellee in the life time of the decedent's husband was the marital obligation of the husband to support and maintain his wife.

There is undisputed evidence to the fact that the husband of the appellant's decedent worked in the City of Indianapolis and was away from the home a great deal of the time. That the appellant's decedent was a person who required constant care and nursing services. From such evidence the Court could have reasonably concluded that appellee's services were for the benefit of both the appellant's decedent and her husband. A married woman can bind herself to pay for personal services rendered to herself and her husband and one rendering such services can recover from the wife's administrator for services prior to the husband's death. *Minnis* v. *Steele* (1921), 79 Ind. App. 45, 132 N. E. 702; *Johnson* v. *Estate of Gaugh et al.* (1955), 125 Ind. App. 510, 124 N. E. 2d 704. The evidence in the case at bar was that the husband of appellant's decedent died on January 6, 1943, and that the appellee continued to perform services for the widow up and until some time in the year of 1944. Therefore, the court could have made an allowance for such services as were performed by the appellee after the death of the husband. On the basis of $40.00 per week, the court could have found that the appellee earned the amount awarded in the judgment in a period dating from the date of the death of husband's decedent up to the time of cessation of services.

The appellant further contends that the appellee received payment for services performed prior to the death of the husband of the decedent from the estate of

the husband. However, the undisputed evidence discloses that the payment which the appellee received from the estate of the husband was for services performed solely for the husband of the decedent and not for services for both the husband and the decedent.

Judgment affirmed.

Gonas, C. J., and Kelley and Bierly, JJ., concur.

NOTE.—Reported in 159 N. E. 2d 317.