REYNOLDS, ADMINISTRATRIX ETC. *v.* LANGFORD.

[No. 30,073. Filed March 13, 1961.]

*Harold J. Anderson, Schrenker & Anderson,* of Anderson, and *Campbell, Gemmill, Browne, Torrance & Sisson,* of Marion, for appellant.

*Peck, Scott & Shine,* of Anderson, for appellee.

BOBBITT, C. J.—This case comes to us on petition to transfer from the Appellate Court under Acts 1933, ch. 151, §1, p. 800, being §4-215, Burns' 1946 Replacement. See *Reynolds* v. *Langford* (1960), 166 N. E. 2d 873, for opinion of the Appellate Court.

This is an action under Acts 1937, ch. 259, §1, p. 1229, being §47-1021, Burns' 1952 Replacement, for the alleged wrongful death[1] of one James C. Reynolds who was "being transported without payment therefor" in an automobile owned and operated by the appellee herein.

The sole error assigned is the overruling of appellant's motion for a new trial.

We need only consider specification 3 thereof which presents the question: Did the trial court err in sustaining defendant-appellee's motion for a directed verdict tendered at the conclusion of plaintiff-appellant's case-in-chief?

The trial court may properly give a peremptory instruction to find for the defendant "[w]hen there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant." *Whitaker, Admr.* v. *Born-*

---

1. Acts 1951, ch. 140, §1, p. 367, being §2-404, Burns' 1946 Replacement.

*trager* (1954), 233 Ind. 678, 680, 122 N. E. 2d 734; *Johnson* v. *Estate of Gaugh et al.* (1955), 125 Ind. App. 510, 519, 124 N. E. 2d 704; *Vann* v. *Vernon General Ins. Co.* (1956), 126 Ind. App. 503, 133 N. E. 2d 70.

The trial court was justified in sustaining a motion for a directed verdict in the present case unless there was some evidence of probative value from which the jury might have found, or from which a proper inference might have been drawn, that appellee was conscious of his conduct as he entered the intersection of the highways; that he knew of the existing conditions surrounding such intersection as he approached it; that he knew that injury to his passenger would probably result if he proceeded into the intersection with reckless indifference to the consequences; and that he consciously and intentionally failed to stop at a preferential highway, as the result of which his passenger, James C. Reynolds, was killed. *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 607, 50 N. E. 2d 875; *Brown* v. *Saucerman* (1958), 237 Ind. 598, 602, 145 N. E. 2d 898, 899.

The complaint alleges in part here relevant that at about 11:30 P.M. on September 10, 1955, the decedent, James C. Reynolds, was riding as a guest in an automobile owned and operated by appellee-Langford; that such automobile was traveling north upon what is commonly known as Main Street Road in Madison County, Indiana; that such road is paved and intersects State Road 67 approximately one mile south of the city limits of Anderson, Indiana; that State Road 67 is a heavily traveled paved road; and that there are "stationary stop signs erected at said intersection requiring traffic on Main Street Road to stop before entering" the intersection.

"That the defendant, Billy Langford, was guilty of

wanton and wilful misconduct in this, to-wit: that he drove his automobile at an excessive rate of speed, to-wit: In excess of forty (40) miles per hour into said intersection without stopping or slowing down into the side of a truck, traveling west on State Road 67 with such force and violence as to completely demolish said automobile and to cause said truck to run off the paved portion of said highway and upset; that the decedent as a result of said crash and collision was thrown from said automobile onto the pavement of said intersection and killed instantaneously."

The evidence most favorable to plaintiff-appellant may be summarized as follows:

State Road 67 runs generally east and west at the point of intersection with Main Street Road which runs generally north and south. It is a three-lane preferential highway paved to a width of 30 feet. Main Street Road is surfaced with blacktop and is 18 feet wide. There are standard octagon-shaped stop signs at the intersection, one on the south side of State Road 67, and one on the north side. The sign on the south side is on the east side of Main Street Road just outside the intersection and is visible to vehicles approaching from the south. When approaching the intersection from the south the view is clear and unobstructed to the east.

The only eye witness to the collision testified that about 11:25 P.M. on Saturday (September 10, 1955), while he was waiting in the center lane of State Road 67 to make a left turn north on the Main Street Road, he noticed an automobile approaching the intersection from the south. He first saw the automobile when it was approximately 400 feet from the intersection, and at that time it was traveling at a speed of 50 or 60 miles per hour and continued at this speed into the intersec-

tion. He also observed a truck about 500 or 600 feet east of the intersection (traveling west). The lights were burning on both the truck and the automobile and it was "drizzling rain" at the time; that the automobile entered the intersection without stopping and struck the truck which was traveling west in the right (north) lane of State Road 67. The truck overturned on the north side of the road about 60 or 70 feet from the point of contact, and the car "bounced" and "turned" facing northwest in the center lane of State Road 67.

A sergeant of the Indiana State Police who arrived at the scene of the accident at about 11:35 P.M. testified that it was raining at the time he arrived and the pavement was wet; that the front and right side of the automobile was almost completely demolished; and that it was "quite a broad intersection" and there were skid marks extending from the point of impact for about 20 feet within the intersection.

This witness further testified that he had a conversation with appellee on or about October 7, 1955, at the home of a relative and in the presence of appellee's brother-in-law and his sister in which he told the witness that he and the deceased-Reynolds had gone out on Main Street Road the evening of the accident and were following another car in which there were two girls. They followed the car south on Main Street Road until they discovered there was a man in the car, whereupon they turned around and drove back north toward town. In reply to the question, "Tell what you said and what he said," this witness answered:

"I explained to Mr. Langford that I hadn't completed my investigation of the accident and I wanted his version of the accident. He told me that he had gone out on Main Street Road that particular evening, he and Mr. Reynolds. . . . He

told me he knew there was a stop sign at the intersection. However, he didn't see it and didn't realize he was in the intersection until too late. He saw something coming. He didn't know whether it was a car or truck and that was the last he remembered."

The other principal witness testified that she lived about two miles south of the intersection of State Road 67 and Main Street Road, and on September 10, 1955, appellee and the deceased-Reynolds came to her home at about six o'clock P.M.; that appellee asked her if she would go with him and Reynolds to the Cozy Corner, and when she said "No" he backed out of the driveway and drove toward Main Street.

This witness further testified that she saw appellee again that evening at approximately 11:15 or 11:20 P.M. when he returned with Reynolds and wanted her to get out of bed and let him in the house, and when she refused he turned and walked off the step to the car, which he entered on the driver's side, and drove back toward Main Street where he turned north toward State Road 67; and that she next saw appellee when he was released from the hospital.

*Rickner* v. *Haller* (1954), 124 Ind. App. 369, 375-376, 116 N. E. 2d 525, and upon which appellant relies, is not applicable here because in that case there was evidence from which a jury might have concluded that appellant entered the preferential highway with *conscious* indifference to the likelihood of injury to his guest and with warning and knowledge of the approach of the other car, while there is no evidence in the record in the present case from which any *conscious* misconduct or warning and knowledge of the approach of the truck could be inferred.

In *Becker* v. *Strater* (1947), 117 Ind. App. 504, 72 N. E. 2d 580, the trial court directed a verdict for the

defendant at the close of the plaintiff's evidence, and the Appellate Court affirmed. In that case both appellant and appellee were familiar with the intersection. As appellee-Strater approached the intersection he slowed his car to about 15 or 20 miles per hour, and did not bring his car to a stop, but "stepped on the gas" and started across the intersection without looking to his right.

In considering whether the evidence was sufficient to establish wilful or wanton misconduct, the Appellate Court at page 507 of 117 Ind. App. said:

"When he reached the intersection he failed to look to his right and he failed to stop. A jury could properly find either of these acts to constitute negligence. But could they properly find either or both acts to constitute willful or wanton misconduct? We think not. Mere negligence is not sufficient. The violation of a statute does not necessarily constitute willful or wanton misconduct.

"There was nothing about appellee's conduct suggesting reckless abandon. He did not rush into the intersection knowing that other cars were approaching. All the evidence is to the effect that he had no knowledge of the approach of the automobile which struck him. He was not warned either by others or by his own senses.

"Applying the definition of willful or wanton misconduct above set forth, we think it cannot be said that, with knowledge of existing conditions, appellee persisted with reckless indifference to consequences in a course which he knew would probably result in injury to his guest."

The rule as to what is necessary to show "willful or wanton" misconduct is succinctly stated in *Bedwell* v. *DeBolt, supra* (1943), 221 Ind. 600, at page 607, 50 N. E. 2d 875, as follows:

"To hold one guilty of 'wilful' or 'wanton' conduct, it must be shown that he was conscious of

his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries."

In *Sausaman* v. *Leininger* (1958), 237 Ind. 508, 514, 146 N. E. 2d 414, 418, this court added,

"We concur in the fact that to constitute 'willful or wanton misconduct' there must be a 'perverse motive,' in that the misconduct must be conscious and intentional and of such a nature that under the known existing conditions injury will probably result therefrom."

From the evidence in the record here we are unable to say that appellee consciously and with knowledge that the truck was approaching, intentionally and with reckless indifference to the consequences, drove into the intersection herein knowing that if he did so injury to his passenger would probably result.

While the evidence here might sustain a charge of negligence, there is, however, a total absence of evidence or legitimate inference in favor of plaintiff-appellant upon the issue of willful or wanton misconduct. The trial court, therefore, properly gave the jury a peremptory instruction to find for the defendant-appellee at the close of the plaintiff's evidence.

Judgment affirmed.

Landis and Arterburn, JJ., concur.

Jackson, J., dissents with opinion.

Achor, J., not participating.

## DISSENTING OPINION

JACKSON, J.—The only question here for determination is the propriety of the action of the trial court in sustaining appellee's motion for a directed verdict at the close of appellant's case in chief.

The record here discloses that appellee was familiar with the intersection where the collision, resulting in the death of appellant's decedent occurred, that he and decedent had twice or three times that evening, once just minutes before the collision, crossed the same. The intersection was marked by stop signs, the presence of a car awaiting clearance to make a left turn, and by the approaching truck later involved in the collision. The lights were burning on all vehicles. Appellee did not slacken speed or stop before entering the intersection, and collided with the truck with sufficient force to upset said truck some 60 to 70 feet from the point of impact.

The Appellate Court opinion as reported in 166 N. E. 2d 873 exhaustively reviews and considers the questions here involved and it, in my opinion, arrived at the correct decision.

I would deny transfer.

NOTE.—Reported in 172 N. E. 2d 867.