KING, ADMINISTRATOR, v. ARNOT.

[No. 12,929. Filed April 19, 1928. Rehearing denied July 20, 1928. Transfer denied October 30, 1928.]

*William W. Hammond* and *C. Severin Buschmann*, for appellant.

*Samuel Ashby*, for appellee.

REMY, C. J.—Appellee, under the name of Katherine Harper, filed claim against the estate of Helena K. Harper, deceased, for services alleged to have been rendered decedent and James W. Harper, husband of decedent. The verified claim is, in substance, that claimant, a niece of James W. Harper, was taken into the home of decedent and her husband, at the age of twelve, with the understanding and agreement that she was to live with them as their child, and to live with the survivor of them, and in the event she survived the survivor, she was to receive for her services a sum equal to one-half of the estate left by the survivor; that Helena K. Harper survived her husband; that claimant in all things complied with the agreement; and that the value of one-half decedent's estate is $10,000, which sum, less a payment of $600, is demanded.

After claim was filed, the marriage of appellee was suggested, and the name of claimant was amended to read "Katherine Harper Arnot." Claim having been

disallowed by the administrator, a trial resulted in a finding and judgment for claimant for $2,000.

It appears from the evidence that James W. Harper and his wife, Helena K. Harper, appellant's decedent herein, bore to appellee the relation of uncle and aunt, and, being without children of their own, they expressed a desire that appellee should make her home with them. Appellee's parents gave their consent, and appellee left her home, and went to live with the uncle and aunt, where she lived as a member of the family continuously from 1899 till the death of James W. Harper in 1920, and thereafter with the aunt until her death in 1923, a total of twenty-four years. As a member of the family, she was loved and treated as a daughter, and through the years rendered such services in the household as a faithful daughter would render; she was not adopted, but there is much evidence that there was an understanding that she was to inherit one-half of their estate, which estate, in real and personal property, was valued at approximately $20,000.

Two letters written by Helena K. Harper—one to her legal heirs, the other to appellee, were admitted in evidence, over objection. The letter to the heirs contained the following words: "It has been well understood that Katherine Harper, my husband's niece by blood ties, my niece by ties of deepest affection, shall inherit one-half of all property owned by us. Up to this night I have failed to make a will, but am prompted by the increasing proof of uncertainty of human existence no longer to postpone this matter, so am writing this request that there shall be no litigation or hindrance to her full possession of one-half of all real estate I possess, . . . after all expenses and debts are paid, . . . which shall be paid out of bonds in safety box, . . . if there are no other available funds, then said bonds shall be paid one-half to Katherine Harper, the other half to be

equally divided between my two brothers and Delbert K. Baggs, Hendricks King, Donald King and Helen B. King . . . . This is a conscientious bequest. Whatever property I possess, my husband acquired; he was always just, kind and generous, and trusted my integrity. I am sure no relative mentioned here will dispute our moral right to do as we see fit with what has been entrusted to our care. I love you all and trust you not to interfere with our wishes concerning Katherine Harper." The letter to appellee is as follows: "I have just written a letter to my family outlining what I want done with your uncle's and my property, dictating one-half of all real estate and remaining bonds after debts, expenses, etc., are paid, to be yours. Your uncle's watch he gave you when I should be through with it. Now, my dear, I am going to ask you to keep close to Helen. If she ever needs aid, help her for auntie's sake."

At the trial it was not contended that there had been an express contract to pay appellee for her services; recovery was sought upon the theory that the facts showed an implied obligation.

The important question presented by this appeal is whether the evidence is sufficient to show that there was an implied contract to pay appellee for the services rendered by her. Preliminary to that, however, is the question as to the alleged error of the court in admitting in evidence the letters to which reference has been made.

It is urged by appellant that these letters do not tend to prove any contract, express or implied, to pay appellee for her services, and that they are, therefore, inadmissible for any purpose. We do not concur in that view. Appellee having lived with her uncle and aunt as a member of their family, it would be presumed, in the absence of evidence to the contrary, that the services rendered were gratuitous. Clearly, the

letters tended to rebut that presumption, and were properly admitted.

Is the evidence sufficient to support the finding of the court that there was an implied contract? An examination of the evidence reveals that appellee did not go to her uncle's because she was in need of a home; she had a home with her parents. She left that home just at the time in her life when she had become old enough to be of service to the family, and went to live with her uncle and aunt at their request; she went to supply a need in their home, they being without children. To do so, she gave up the companionship of her parents and her brothers and sisters; no small sacrifice, not only for herself, but for her parents as well. That she met the need to the satisfaction of the uncle and aunt is evidenced by the fact that she remained with them during their respective lives, and is further evidenced by the aunt's letters. In the letter to her collateral kindred, the aunt refers to appellee in most endearing terms, and states, among other things, that, "It has been well understood that Katherine Harper my husband's niece . . . shall inherit one-half of all property owned by us." One witness for appellee testified that she had a conversation with James W. Harper and Helena K. Harper "as to the understanding they had" with appellee "in the event she lived with them as their daughter," in which conversation they told witness "that they expected to leave to her one-half of what they owned at the death of the last." The same witness also testified that she had a conversation with Helena K. Harper after the death of her husband, in which conversation she referred to the agreement that Katherine was to have half of the property, and said she felt that she "owed it to Katherine to leave her one-half of what she had for her services and all." Other witnesses testified as to similar declarations made to them by appellant's decedent and her husband.

Appellant contends that it does not affirmatively appear from the evidence that the "understanding" referred to in the letter of appellant's decedent to her kindred, and in the testimony of witnesses, was an understanding with appellee, and that there is no evidence that the statements of Helena K. Harper and husband were communicated to appellee, or that she was thereby induced to render the services in reliance thereon; and that, therefore, there is no evidence on which to base an implied contract to pay for the services. In support of this contention, appellant cites and relies on the case of *McClure* v. *Lenz* (1907), 40 Ind. App. 56, 80 N. E. 988. Although the facts in that case are in some ways similar to those of the case at bar, they are not, in fact, the same—not being the same, it is not a controlling precedent here. In considering the opinion in that case, however, it should be noted that the reasoning and conclusion of the court therein is not in harmony with that of the Supreme Court in an opinion written by Judge Mitchell in *Wallace, Admr.,* v. *Long, Gdn.* (1886), 105 Ind. 522, 5 N. E. 666, 55 Am. Rep. 222. More important, still, is the fact that this court, in the later case of *Wainwright Trust Co., Admr.,* v. *Kinder* (1918), 69 Ind. App. 88, 120 N. E. 419, in effect, overruled that part of the opinion in the McClure case, on which appellant relies. We concur in the reasoning and conclusion of this court as the same is expressed in the Wainwright case, which is in accord with the weight of authority. On the question now under consideration in the instant case, this court, in the Wainwright case, correctly stated the law to be: "To warrant the finding of such contract, the elements of intention to pay on the one hand and expectation of compensation on the other must be found to exist; but such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered

and any other facts and circumstances which may reasonably be said to throw any light upon the question." Governed by the law thus stated, as we must be, we cannot say that there is no evidence to sustain the finding of the trial court that there was an implied contract to pay appellee for her services.

We hold that there is evidence from which an implied contract to pay appellee for her services may be inferred, and that the decision of the court is sustained by sufficient evidence. Supporting authorities of this state are collected and cited in *Wainwright Trust Co., Admr.*, v. *Kinder, supra.*

Affirmed.