WILHOITE, EXECUTRIX, v. BECK.

[No. 20, 549. Filed November 1, 1967. Rehearing denied January 3, 1968. Transfer denied February 21, 1968.]

*Claude M. Warren, Gilbert E. Snider,* and *Goodrich and Warren,* of counsel, all of Indianapolis, for appellant.

*Steers, Klee, Jay & Sullivan* and *Robert W. McNevin,* of counsel, all of Indianapolis, for appellee.

FAULCONER, J.—Appellant's decedent, Flossie B. Lawrence, arrived at the home of appellee Ruth Beck in 1939 or 1940, apparently uninvited, unannounced and unexpected, and stayed until her death on July 12, 1963. After decedent's death appellee filed a claim against the estate of decedent for room, board and care and companionship allegedly furnished decedent from January 15, 1942 until July 12, 1963, all of the total value of $27,837, for which appellee prayed judgment. The claim was tried by the court, without a jury, and the court found for the claimant-appellee here—and entered judgment in the sum of $11,368. Appellant's motion for new trial was overruled and such action is the only error assigned on this appeal.

The specifications of appellant's motion for new trial argued on this appeal are 1) error in the assessment of the amount of recovery, in this, that the amount is too large; 2) the decision of the court is not sustained by sufficient evidence;

3) the decision of the court is contrary to law; and 4) error of law occurring at the trial, as follows:

(a) The court erred in calling an incompetent witness, the claimant Ruth Beck, as a witness on behalf of the court and in permitting an incompetent witness, the claimant Ruth Beck, to testify in response to questions propounded by the claimant's attorney, all over objection of counsel for the Executrix of the estate that said person was an incompetent witness and after having previously ruled that the witness, the claimant Ruth Beck, was an incompetent witness when called as a witness on her own behalf.

(b) The court erred in admitting into the evidence, over the objection of counsel for the Executrix of the estate, the deposition of the claimant for purposes other than contradicting or impeaching the claimant.

(c). The court erred in admitting the testimony of the witness Clark Gideon to testify in regard to rental value of the living quarters occupied by decedent in claimant's home, over the objection of counsel for the Executrix of the estate, that said witness had not been qualified as an expert on rental values.

(d) The court erred in admitting the testimony of the witness Wilson S. Parks to testify in regard to the rental value of the living quarters occupied by decedent in claimant's home over the objection of counsel for the Executrix of the estate, that said witness had not been qualified as an expert on rental values.

Appellant's first specification is not maintainable. The record is replete with evidence to sustain the amount of the judgment. Also, most of this evidence is unrefuted and the balance is at least conflicting.

Specification 4(b), (c) and (d) claim error in admitting claimant's deposition and allowing two witnesses to testify as real estate experts. We are of the opinion that any error in such actions of the trial court has been waived. Nowhere in the motion for new trial or the brief of appellant filed herein are the specific objections set forth.

To present error in the admission of evidence the motion must set forth the question, objection, ruling of the court and

the answer, or at least the substance thereof. 2 F. & W., *Ind. Pract.* (1963 P.P.), § 1812, Comment 8(a), p. 133; 2 Wiltrout, *Ind. Civ. Proc.*, § 1770, p. 537 (1967).

Also, in the argument portion of her brief appellant cites two statutes and one case as authority for the specified errors 4(b), (c) and (d). Appellant's argument consist mainly of her conclusions. This is insufficient under our rules. *Chadwick v. Alleshouse* (1964), 136 Ind. App. 52, 56, 57, 196 N. E. 2d 901. Rule 2-17, Rules of the Supreme Court of Indiana, 1964 Revision.

Appellee contends that the taking of claimant's (appellee's) deposition by the estate was a waiver of the incompetency of the claimant to testify and did not constitute error as alleged in specification 4(a) of appellant's motion for new trial, citing as authority the opinion of this court in *Plummer v. Ulsh* (1965), 211 N. E. 2d 312, 7 Ind. Dec. 7, which states, at page 313 of 211 N. E. 2d, pages 8-9 of 7 Ind. Dec., as follows:

"It is the rule in Indiana, as in most jurisdictions, that a party taking a pretrial examination of an incompetent witness, thereby waives the right to object to the competency of the witness. *Oleska, Administrator v. Kotur* (1943), 113 Ind. App. 428, 445, 446, 48 N. E. 2d 88; . . ."

However, since the filing of briefs and oral argument in the present cause our Supreme Court has reversed the above decision of the Appellate Court, (*Plummer v. Ulsh*) and specifically overruled the *Oleska* case and held that the mere taking of a discovery deposition or a conditional examination under Acts 1961, ch. 292, § 1, p. 729, § 2-1533, Burns' 1966 Spl. Supp., or Acts 1955, ch. 73, § 1, p. 141, § 2-1728, Burns' 1966 Spl. Supp., does not waive the privileges extended under Acts 1881 (Spec. Sess.), ch. 38, § 276, p. 240, § 2-1715, and Acts 1881 (Spec. Sess.), ch. 38, § 277, p. 240, § 2-1716, *et seq.*, Burns' 1946 Repl. *Plummer v. Ulsh* (1967), 248 Ind. 462, 229 N. E. 2d 799, 801, 11 Ind. Dec. 273, 276.

There is however an exception to § 2-1715, *supra*. This exception is contained in Acts 1883, ch. 81, § 1, p. 102, § 2-1718, Burns' 1946 Repl., which provides, in pertinent part, that "the court may, in its discretion, require any party to a suit or other person to testify, and any abuse of such discretion shall be reviewable on appeal."

It has been held that this power of the court to require a witness to testify is not limited to unwilling witnesses. *Myers* v. *Manlove* (1913), 53 Ind. App. 327, 330-331, 101 N.E. 661. Also, that this power of the court should be exercised with caution. *Christman, Admr.* v. *Hack* (1927), 86 Ind. App. 79, 81, 156 N.E. 165.

Therefore, the question presented in the case at bar is whether the trial court abused its discretion in calling the claimant-appellee as a court witness and allowing her to testify.

This court has held several times, under § 2-1718, *supra*, that after the plaintiff has made out a prima facie case by the testimony of other witnesses there is no abuse of discretion in the trial court requiring an incompetent witness to testify. *Alexander's Estate* v. *Alexander* (1966), 138 Ind. App. 443, 212 N. E. 2d 911, 915, 7 Ind. Dec. 377; *Heavin* v. *Sutherlin* (1945), 116 Ind. App. 310, 313-314, 64 N. E. 2d 43; *Talbott, Administrator* v. *Barber* (1894), 11 Ind. App. 1, 12, 38 N.E. 487.

In the present case appellee, called as a witness in her own behalf, testified as the last witness in her case in chief.

In discussing § 2-1718, *supra*, this court in *Dearing* v. *Coulson* (1911), 48 Ind. App. 414, at page 416, 96 N.E. 9, at page 10, said:

"The present statute, however, expressly provides for the review of the discretion exercised by the trial court, and it becomes the duty of the court on appeal to examine into the circumstances under which the discretion was exercised. It has been held that every case, wherein the discretion has been exercised, must necessarily be determined

on its own merits, and no general rule that would be applicable in all cases can be laid down."

We have reviewed the evidence produced by appellee prior to her testimony and are of the opinion that a prima facie case was made in that the court could have found that the evidence or legitimate inferences therefrom, constituted a prima facie case and, therefore, there was no reversible error in the trial court requiring appellee to testify.

Appellant groups, for the purpose of argument, specifications 2 and 3 of her motion for new trial, that the evidence is insufficient and the decision of the court is contrary to law.

"Where one accepts valuable services from another the law implies a promise to pay for them and the contract implied by law may support a claim against his estate. To warrant a finding of an implied contract of decedent to pay for services rendered by claimant, the elements of intention to pay and expectation of payment must be found to exist. The intention of decedent to pay for services rendered and claimant's expectation of compensation may be inferred from conduct, where equity and justice require compensation, as well as from direct communications between the parties . . ., or such inference of compensation may arise from the relation and situation of the parties, the nature and character of the services rendered, and any other facts and circumstances shedding light on the question at issue." 34 C.J.S., *Executors and Administrators*, § 784, pp. 853-854. *Moslander* v. *Moslander's Estate* (1941), 110 Ind. App. 122, 128-129, 38 N.E. 2d 268; *Winston* v. *Kirkpatrick* (1941), 110 Ind. App. 183, 188, 37 N. E. 2d 18 (Transfer denied) ; *In re Gockel's Estate, Gockel* v. *Gockel, Admx.* (1937), 103 Ind. App. 541, 542-543, 6 N. E. 2d 730; *King, Admr.* v. *Arnot* (1928), 88 Ind. App. 138, 143-144, 161 N. E. 571 (Transfer denied).

Appellant argues that the evidence shows that appellee and decedent were second cousins and, therefore, there is a presumption that such services and accommodations were rendered gratuitously.

The evidence clearly establishes that appellee and decedent were distant cousins, second or third. To our knowledge our

courts have not ruled upon such a relationship in this type of action.

We are of the opinion, after a review of the text writers and decisions of those jurisdictions having passed upon the issue, that the relationship of second or third cousins in and of itself is insufficient to raise the presumption of gratuity. 34 C.J.S., *Executors and Administrators*, § 371, pp. 115-116; 58 Am. Jur., *Work and Labor*, § 29, p. 534.

However, the presumption that such services were rendered gratuitously may also arise where the parties live together as a family which alone, or in conjunction with blood relationship, may raise the presumption.

"This presumption affecting members of the household applies to all who actually live together as a family, however related, or whether related or not by blood or affinity, though the presumption may be strengthened or weakened by the closeness or remoteness of the relation and intimacy of the parties as a circumstance of the case." *Crampton* v. *Logan* (1902), 28 Ind. App. 405, 407, 408, 63 N. E. 51, 52; *Walting* v. *Brown* (1965), 139 Ind. App. 18, 211 N. E. 2d 803, 805, 806, 7 Ind. Dec. 162, (Transfer denied).

Such presumption is rebuttable by proof of a contract, express or implied. The presumption of gratuity indulged as to persons living as members of the same family may be rebutted by an express contract to pay and a recovery may be had upon the contract, or it may be rebutted by facts and circumstances which exclude the intention on the part of such persons that the thing furnished or services rendered were gratuitous, and raise an inference that compensation was intended, and in justice and fairness under the circumstances they ought to have made a contract to pay; under such circumstances the law will imply a contract and require payment. *Hill* v. *Hill* (1889), 121 Ind. 255, 260, 23 N. E. 87; *Wainwright Trust Co., Admr.* v. *Kinder* (1918), 69 Ind. App. 88, 97, 98, 120 N.E. 419.

"A family, within the meaning of the family relation doctrine, is generally defined as a collective body of persons, who form one household, under one head and one domestic government." Annot., 7 A. L. R. 2d 36 (1949).

"[T]he term 'family' means a collection of persons who form one household, under one head and one domestic government, and who have reciprocal, natural or moral duties to support and care for each other." 58 Am. Jur., *Work and Labor*, § 11, p. 250.

Although decedent lived in claimant's home for more than 20 years, we are of the opinion that the evidence in the record is not such that we could say, as a matter of law, that reasonable minds could reach only the conclusion that there existed a family relationship between them. There is evidence that the decedent was an independent person in the extreme, came and went when and as she pleased; and most of the time she took her meals alone, cooked for herself and entertained her own guests alone. Although she did some chores around the house they were evidently voluntary on her part as she was never asked to do anything.

Since there was no contention that there existed an express contract between decedent and appellee, the trial court was concerned with whether an implied contract was proven. We are unable to determine, from its general finding for claimant-appellee, whether the trial court, in arriving at its finding, found there were facts or reasonable inferences therefrom establishing an implied contract sufficient to rebut the presumption of gratuity having first determined either a blood relationship or family relationship, or both, existed, or whether it first determined that no such relationship existed and, therefore, claimant had the benefit of the general presumption of intention to pay and expectation of payment.

We will on appeal however adopt that theory, within the pleadings and proof, which will uphold the action of the trial court as all presumptions are indulged in favor of the trial court's findings.

" '[A]n implied contract or promise is inferred from the conduct, situation or mutual relations of the parties, and is enforced by the law on the ground of justice.' " *Hays* v. *McConnell* (1873), 42 Ind. 285, 286-287; *Wainwright Trust Co., Admr.* v. *Kinder, supra* (1918), 69 Ind. App. 88, 97, 120 N. E. 419; *Crampton* v. *Logan, supra* (1902), 28 Ind. App. 405, 408, 63 N. E. 51.

"The question as to whether or not there was either an express contract or an implied contract to pay for the services is matter of fact for the jury to determine upon the evidence; and this court in passing upon evidence in such cases must be guided by the well established rule applicable in all cases that the province of the jury to determine questions of fact must not be disturbed if there was evidence tending to support the verdict." *Crampton* v. *Logan, supra* (1902), 28 Ind. App. 405, 408-409, 63 N. E. 51.

Although during the time decedent lived at appellee's home there is no evidence of any conversation between them concerning the matter of payment, we are of the opinion that the facts and reasonable inferences therefrom meet the requirement that the finding of an implied contract be supported by substantial evidence of probative value. Nor can we say that reasonable minds could not so conclude.

There was evidence that decedent first occupied a basement room; that she later shared a room on the second floor with claimant's mother, and when the latter was taken to a nursing home decedent occupied said room alone until her death. Although decedent could go anywhere in the house she was not treated, nor did she expect to be treated, as one of the family. Decedent was employed most of the time she lived in the house. One definite strain runs throughout the record of the evidence in this cause as related by several witnesses, and that is the fact that decedent was an independent woman in the extreme, that she did not want charity and, in fact, when her meals were brought to her room it was necessary to tell her someone brought them to her or that they were "left-overs." There was further evidence that claimant instructed her hired girl to keep an eye on de-

cedent, but not to allow decedent to suspect it as she would be resentful. Claimant-appellee testified that she never intended to give the services and accommodations gratuitously. There was evidence that at one time appellee decided to move but cancelled the move because decedent resented the fact that no room would be available for her. One reading this record can hardly conceive that decedent did not intend to pay for these accommodations. She was an intelligent woman, "well read", and employed in a responsible position most of the time. One is impressed by the apparent attitude taken by all parties of giving decedent "a wide berth", so to speak, due to her independence and pride in "taking care of herself."

Appellant further argues that decedent named appellee as beneficiary in her will, thus carrying out a statement of decedent to a third party that claimant "would be taken care of." This does not, however, necessarily preclude recovery by a beneficiary of a legitimate claim for services rendered decedent against decedent's estate. *Witt* v. *Witt, Executrix* (1938), 105 Ind. App. 415, 421, 12 N. E. 2d 1013; *Allen, Exr.* v. *Etter* (1931), 92 Ind. App. 297, 307, 308, 175 N. E. 286.

It is only an element to be considered in determining whether there was an express or implied contract to pay and be paid.

An examination of the will discloses that decedent left $500 to each of four persons, unrelated to her, and the residue of her estate to six cousins, including appellee, to share equally. There is no evidence of the value of decedent's estate or of what it consisted.

The trial court, in our opinion, could reasonably conclude from the facts and circumstances of this cause, and from the fact that decedent directed her executrix to pay "all of my [her] just debts", that she did not intend such bequest to appellee to compensate for such accomodations and services provided her by claimant. At least we

could not hold otherwise as a matter of law. It is further evident from the record that none of the other beneficiaries offered or performed more than perfunctory and infrequent services for the decedent during this time although at least some of them were aware of her needs and failure to pay claimant.

No general rule can be set forth as to what facts are necessary to prove the existence of an implied contract. We are of the opinion, on reviewing the evidence in the record before us, the circumstances, and the inferences the court could have drawn therefrom, that the finding of the trial court and the judgment entered thereon is just and fair and should be affirmed.

Judgment affirmed.

Carson, P. J., Cooper and Prime, JJ. concur.

NOTE.—Reported in 230 N. E. 2d 616.