# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 08 2016, 8:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey B. Kolb
Charles E. Traylor
Kolb Roellgen & Kirchoff LLP
Vincennes, Indiana

ATTORNEYS FOR APPELLEE

John A. Cremer
Jonathan E. Lamb
Cremer & Cremer
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Moriarty, as Personal Representative of the Estate of Donna Davis, Deceased, *Appellant/Cross-Appellee,* <br><br> v. <br><br> West Morgan, LLC, *Appellee/Cross-Appellant.* | June 8, 2016 <br><br> Court of Appeals Case No. 55A01-1507-EU-791 <br><br> Appeal from the Morgan Circuit Court. <br> The Honorable Matthew G. Hanson, Judge. <br> Cause Nos. 55C01-1405-EU-62, 55C01-1409-PL-1724 |

**Barteau, Senior Judge**

# Statement of the Case

Thomas Moriarty,[1] as Personal Representative of the Estate of Donna Davis, appeals the trial court's judgment rejecting his claims in part. West Morgan, LLC, cross-appeals the portions of the trial court's judgment that are favorable to Moriarty. We affirm in part, reverse in part, and remand with instructions.

# Issues

Moriarty raises four issues, which we restate as:

I. Whether the trial court abused its discretion in determining two of West Morgan's witnesses were competent to testify, subject to certain limitations.

II. Whether the trial court abused its discretion in admitting West Morgan's Exhibits H and I.

III. Whether there is sufficient evidence to support the trial court's judgment in favor of West Morgan on its claim for specific performance of the land contracts.

IV. Whether the trial court's award of damages in favor of Moriarty is insufficient.

On cross-appeal, West Morgan raises six issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion in placing limits on testimony from two of West Morgan's witnesses.

II. Whether the trial court abused its discretion in considering Moriarty's Exhibit 10.

---

[1] Moriarty's name is spelled several different ways in the briefs and the transcript. We use the spelling he provided during his trial testimony.

III. Whether the trial court erred in concluding Moriarty was entitled to damages.

IV. Whether the trial court had personal jurisdiction over John Kennedy.

V. Whether the trial court erred in rejecting West Morgan's claim for attorney's fees, and whether West Morgan is entitled to attorney's fees on appeal.

For the most part, we will address the claims and cross-appeal claims together.

## Facts and Procedural History

This case arises from an unusual land transaction. Donna Davis owned twenty-five acres of land, on which a house was situated, in Morgan County. She negotiated to sell the land to West Morgan, LLC, but she also wanted to build a new house on the property and live there for a period of time. The record does not provide many details on the negotiations, but it appears the parties agreed a large portion of the purchase price would be paid in cash.

John Kennedy formed West Morgan as an "estate planning device" to transfer assets to his sons. Tr. Vol. I p. 74.[2] Kennedy's sons own West Morgan, but he is its agent and maintains the company's records. The company's business is the acquisition, management, and selling of real estate. Kennedy admitted West Morgan "is a property holding company[,] it doesn't really have any cash." *Id.* at 86.

___

[2] The transcript is not consecutively paginated, in violation of Indiana Appellate Rule 28(A)(2).

[7] Kennedy is also an owner of Sunny Brook, Incorporated. Sunny Brook manages apartments and owns a restaurant in Martinsville, Indiana. Kennedy maintains Sunny Brook's records, and Brian Cunningham works for Sunny Brook as an operations manager.

[8] On August 3, 2011, Davis rented a safe deposit box from a local bank. Kennedy testified that on that day, he counted out $200,000 in cash and put the money into envelopes, using money from Sunny Brook's accounts. He further testified that he obtained the cash from the safe in his office at Sunny Brook's restaurant.

[9] Cunningham testified that August 4, 2011, he met with Kennedy in his office, and Kennedy asked him to double check the money. Cunningham further testified that he removed the money from the envelopes, confirmed Kennedy had $200,000, and put the money back in the envelopes. Next, Cunningham told the trial court that Kennedy took the envelopes to a private room in the restaurant.

[10] Later that day, Davis met with Kennedy, Kennedy's wife Sally, and Tammy Brummett in the private room. Brummett is a notary public and a former employee of Sunny Brook. Cunningham stood outside the room during the meeting. Davis and Kennedy, who acted as West Morgan's representative, reviewed and signed several documents addressing the sale of Davis' real estate.

[11] Davis and West Morgan signed two land contracts, known as Land Contract I and Land Contract II. Land Contract I was for the sale of the twenty-five acres,

and it stated the purchase price was $270,000, to be paid in monthly installments of no less than $3,000. Land Contract II was for the sale of the existing house on the land, and it stated the purchase price was $150,000, to be paid upfront. Both contracts indicated West Morgan was entitled to legal possession of the property, but Davis would be allowed to stay in the new house for three years. Both contracts also indicated the parties would execute a written lease agreement. The contracts did not indicate who would pay the construction costs for Davis' new home.

[12] During the signing meeting, Davis and West Morgan also executed a Memorandum of Land Contract, which Kennedy filed with the county recorder the next day. In addition, Kennedy signed personal guarantees for both of the land contracts. Finally, Davis signed receipts indicating she had received $50,000 from West Morgan for Land Contract I and $150,000 from West Morgan for Land Contract II.

[13] After all of the documents were signed and notarized, Kennedy, Sally, and Brummett left Davis alone in the room with the envelopes of money. After approximately ten minutes, Davis came out of the room, putting the envelopes in her bag as she left.

[14] Over the next several years, West Morgan made monthly installment payments to Davis under Land Contract I using funds from Sunny Brook. The payments were partially by check and partially in cash. For the first seventeen installment payments, West Morgan indicated that it paid $10,000 in cash and $2,000 by

check. Subsequent installment payments consisted of $1,000 in cash and $2,000 by check. Cunningham counted out the cash for each of the installment payments. West Morgan obtained signed receipts from Davis for each payment.

[15] Meanwhile, Davis built a house on the property. The record does not indicate whether the parties executed a lease as contemplated in the land contracts. There is also no evidence of a separate written agreement between Davis and West Morgan assigning responsibility for construction costs.

[16] Davis died on February 2, 2014. Moriarty, her ex-husband, was her estate's personal representative, and he inventoried its assets. Moriarty and his son with Davis, Michael Moriarty ("Michael"), decided Davis had not received all of the funds to which she was entitled under the land contracts and had not been adequately compensated by West Morgan for the construction costs of the new home.

[17] On June 4, 2014, Moriarty opened Davis' estate. West Morgan filed a claim for specific performance, asserting it had met all of its obligations under Land Contracts I and II and was entitled to receive a deed to the property. Moriarty claimed an affirmative defense of fraud, stating the receipts for the installment payments had been altered to reflect payments that were never made.

[18] Moriarty also filed a Counterclaim, asserting West Morgan had not made any payments under either land contract and the estate was entitled to reimbursement of $138,000 for funds Davis spent while building the house.

Later, Moriarty filed an Amended Counterclaim, seeking forfeiture of the contracts, payment of all amounts owed under the contracts, and compensation under the Occupying Claimant's Statute for costs incurred while building the house. Moriarty also alleged fraud, constructive fraud, and violation of the Crime Victims Relief Act, requesting treble damages and attorney's fees. West Morgan denied Moriarty's allegations, asserted Moriarty's claims were frivolous and filed in bad faith, and requested attorney's fees.

[19]   Next, Moriarty filed a pretrial motion asking the court to determine John Kennedy, Sally Kennedy, and Brian Cunningham were not competent to testify about West Morgan's transactions with Davis. West Morgan filed a response. The court held oral argument and ruled as follows:

> 15) John Kennedy, Sally Kennedy and Brian Cunningham (hereinafter "the three") can testify in regards to their actions with the contracts and issues that were legally recorded with the state in the normal course of business.
>
> l6) The three cannot testify to anything that was said by the decedent, actions she took or items verbally changed at the recording of those documents/date of creation of the contracts.
>
> 17) The three cannot testify to any verbal modifications made by the decedent during the course of the transactions after the recording of the documents/date of creation.
>
> 18) The three can testify about payments they made and the issue of proper weight regarding the receipts/bookkeeping practices by the three will be addressed by the court at the hearing and in the final ruling.
>
> 19) The three cannot testify to any verbal modifications/actions made by the decedent after the date of creation of the contract/recording of the documents.

20) Nothing in this order precludes [Moriarty] from raising objections throughout this testimony if and when they run afoul of the dead man's statute.

Appellant's App. p. 19.

[20] The case was tried to the bench. Cunningham and Kennedy testified as set forth above. In addition, the parties each made several offers to prove. During one offer to prove, Michael identified and discussed Exhibit 10, which consisted of a spreadsheet of expenses, receipts for construction materials, and photographs of the house's interior that Michael concluded accurately set forth the amounts Davis spent while building the house.

[21] The court issued a final judgment in which it determined, "As to the Land Contracts I and II, [West Morgan] has fully complied with the contracts and all amounts due and owing have been paid." *Id.* at 9. Consequently, the court ordered Moriarty to give West Morgan title to the property and houses. Next, the court determined Moriarty's Exhibit 10 should have been admitted into evidence and would be considered as evidence. The court concluded "John Kennedy" owed Moriarty $87,320.31 for construction costs. *Id.* at 10. The court further concluded Moriarty's fraud claims were without merit. Finally, the court denied both parties' requests for attorney's fees. Both sides now appeal the trial court's judgment.

# Discussion and Decision

## I. Witness Competency

[22] Moriarty argues the trial court erred by allowing John Kennedy and Brian Cunningham to testify about the circumstances surrounding West Morgan's transactions with Davis, claiming Kennedy and Cunningham were not competent witnesses because they had personal stakes in those transactions. On cross-appeal, West Morgan asserts the court erred by placing any limits on those witnesses' testimony.

[23] A trial court's ruling on witness competency is reviewed for abuse of discretion. *In re Estate of Lambert*, 785 N.E.2d 1129, 1132 (Ind. Ct. App. 2003), *trans. denied*. An abuse of discretion will be found when the ruling is against the logic and effect of the facts and circumstances before the trial court. *Id.* at 1132-33.

[24] In Indiana, the competency of witnesses in estate cases is governed by several statutes known collectively and colloquially as "the dead man's statutes." The key statute provides, in relevant part:

> (a) This section applies to suits or proceedings:
>
> (1) in which an executor or administrator is a party;
>
> (2) involving matters that occurred during the lifetime of the decedent; and
>
> (3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.
>
> (b) This section does not apply in a proceeding to contest the validity of a will or a proceeding to contest the validity of a trust.

(c) This section does not apply to a custodian or other qualified witness to the extent the witness seeks to introduce evidence that is otherwise admissible under Indiana Rule of Evidence 803(6).

(d) Except as provided in subsection (e), a person:

(1) who is a necessary party to the issue or record; and

(2) whose interest is adverse to the estate;

is not a competent witness as to matters against the estate.

Ind. Code § 34-45-2-4 (2001).

Another relevant statute provides:

(a) Except as provided in subsection (b), a person who acted as an agent in the making or continuing of a contract with any person who has died, is not a competent witness, in any suit upon or involving the contract, as to matters occurring before the death of the decedent, on behalf of the principal to the contract, against the legal representatives or heirs of the decedent.

(b) If the person is called by the decedent's heirs or legal representatives, the person is a competent witness, as to matters about which the person is interrogated by the heirs or representatives.

Ind. Code § 34-45-2-7 (1998). Any party to an estate case retains the right to call and examine any adverse party as a witness, and a trial court may require any party to the suit, or any other person, to testify. Ind. Code § 34-45-2-10 (1998).

The purpose of these statutes is to protect decedents' estates from spurious claims. *Estate of Lambert*, 785 N.E.2d at 1132. Claimants to the estate of a deceased person should not be permitted to present a court with their version of their dealings with the decedent. *Koch Dev. Corp. v. Koch*, 996 N.E.2d 358, 370

(Ind. Ct. App. 2013), *trans. denied*.  Rather than excluding evidence, the statutes prevent a particular class of witnesses from testifying as to claims against the estate.  *Bedree v. Bedree*, 747 N.E.2d 1192, 1195 (Ind. Ct. App. 2001), *trans. denied*.  Thus, when an administrator of an estate is a party to a lawsuit, as a general rule the adverse parties are not competent to testify about transactions that took place during the lifetime of the decedent.  *Estate of Lambert*, 785 N.E.2d at 1132.  The statutes prevent a claimant from testifying as to matters or transactions concerning the decedent, but the claimant may testify about other matters that occurred while the decedent was alive.  *Taylor v. Taylor*, 643 N.E.2d 893, 896 (Ind. 1994).  In addition, the application of the statutes is limited to circumstances in which the decedent, if alive, could have refuted the testimony of the surviving party.  *Bedree*, 747 N.E.2d at 1195.

[27]  Before we address the merits of Moriarty's claims, West Morgan argues Moriarty waived his challenge to Kennedy's competency by questioning Kennedy on cross-examination about matters beyond the scope of direct examination.[3]  An estate may accredit an otherwise incompetent witness with competency to testify for any party to the suit if the estate makes the witness a witness for the estate.  *Matter of Estate of Palamara*, 513 N.E.2d 1223, 1232 (Ind. Ct. App. 1987).  An estate establishes a witness's competency by calling the

---

[3] West Morgan also asserts Moriarty waived his challenge to Cunningham's competency, but West Morgan has not identified any portions of Cunningham's cross-examination where Moriarty allegedly exceeded the scope of direct examination.  For this reason, we decline to address the question of waiver as to Cunningham.

witness on the estate's behalf or by cross-examining the witness beyond the scope of direct examination. *Id.*

[28] On cross-examination, Moriarty asked Kennedy to authenticate his signature on a document, Exhibit 2, which had not previously been admitted into evidence. After discussion by the court and the parties, Moriarty asked the court to admit Exhibit 2 into evidence, and the trial court granted the request. Moriarty effectively made Kennedy his witness by asking him to authenticate an exhibit that had not been discussed on direct examination. As a result, Moriarty waived the protections of the dead man's statutes as to Kennedy, and we will not address Moriarty's claim that the trial court should have barred Kennedy from testifying. *See Estate of Palamara*, 513 N.E.2d at 1232-33 (protections of dead man's statutes waived because party exceeded scope of direct examination of other party's witness).

[29] Moriarty has preserved his allegation that the trial court should not have allowed Cunningham to testify, and we must determine whether the trial court erred by allowing him to testify subject to certain limitations. During direct examination, Cunningham described his background and the scope of his duties as an employee of Sunny Brook. Next, he testified about the day of the signing meeting, explaining he had counted the money that was to be delivered to Davis, accompanied Kennedy to the meeting room, and moved furniture around in preparation for the meeting before Davis arrived. He stood outside the room during the meeting. Cunningham also explained that in the months

after the meeting, he counted the money West Morgan used to make installment payments to Davis.

[30] Cunningham did not describe any interactions or transactions with Davis. Indeed, Davis was not present during any of the activities Cunningham discussed. We conclude Cunningham's testimony, as limited by the court, did not violate the dead man's statutes, and the court did not abuse its discretion by admitting it. *See Citizens State Bank v. Kelley*, 130 Ind. App. 376, 162 N.E.2d 322, 378-79 (1959) ("An objection to the competency of a witness to testify at all as to any matter that occurred during the lifetime of decedent is properly overruled where the witness is competent to testify as to some matters."); *Snider v. Preachers Aid Soc.*, 111 Ind. App. 410, 41 N.E.2d 665, 669 (1942) (no violation of dead man's statutes where treasurer testified in general about the appellee's financial operations).

[31] On cross-appeal, West Morgan claims the court erred by limiting Kennedy and Cunningham's testimony, asserting those witnesses should have been allowed to discuss all aspects of West Morgan's transactions with Davis. In support of its claim, West Morgan cites a line of cases for the principle that testimony from a witness who is otherwise incompetent to testify may be admitted if the party offering the testimony establishes a prima facie case in support of its claim through other evidence. Appellee/Cross-Appellant's Br. pp. 18-19. Those cases are distinguishable because the trial courts in each of those cases called the witnesses to testify on behalf of the court. *See Wilhoite v. Beck*, 141 Ind. App. 543, 230 N.E.2d 616, 620 (1967) ("the question presented in the case at bar is

whether the trial court abused its discretion in calling the claimant-appellee as a court witness and allowing her to testify"); *Alexander's Estate v. Alexander*, 138 Ind. App. 443, 212 N.E.2d 911, 914 (1966) ("Under specifications 16 and 17 the appellant points out that the court called appellee Arletha Alexander as the court's witness."); *Heavin v. Sutherlin*, 116 Ind. App. 310, 64 N.E.2d 43, 45 (1945) ("The question presented, in different ways, is whether the court abused its discretion in calling the appellee and permitting her to testify as above stated."). Here, West Morgan, not the trial court, called Cunningham and Kennedy to testify, so we reject West Morgan's claim.

[32] In summary, the trial court did not abuse its discretion in permitting Kennedy and Cunningham to testify subject to limitations set by the court pursuant to the dead man's statutes.

## II. Admission of Exhibits

[33] Moriarty and West Morgan challenge the trial court's decisions to admit certain exhibits into evidence. The admission of evidence is left to the sound discretion of the trial court, and we will not reverse that decision absent an abuse of discretion. *Estate of Dyer v. Doyle*, 870 N.E.2d 573, 577 (Ind. Ct. App. 2007), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

[34] Moriarty claims the trial court erred by admitting Exhibits H (a receipt signed by Davis for a payment under Land Contract II) and I (copies of the signed receipts for payments under Land Contracts I and II as well as receipts for

installment payments under Land Contract I). Moriarty did not object to the admission of Exhibit H at trial, so his claim as to that document is waived. *Perez v. Bakel*, 862 N.E.2d 289, 295 (Ind. Ct. App. 2007) ("Failure to timely object waives the right to have the evidence excluded at trial and the right on appeal to assert the admission of evidence as erroneous."). Moriarty acknowledges he did not object at trial and instead argues he sought to preclude the admission of Exhibit H through a pre-trial motion in limine. Challenging the admission of evidence via a motion is limine is insufficient to preserve the issue for appeal. *Id.*

[35] Turning to Exhibit I, Moriarty argues the receipts are inadmissible because they do not qualify as business records as defined by Indiana Evidence Rule 803(6). At trial, he did not challenge Exhibit I pursuant to Evidence Rule 803(6). Instead, Moriarty objected on grounds of "lack of foundation as to the relevance" and challenged the accuracy of the dates on several of the receipts. Tr. Vol I, p. 39. A party may not advance an argument on appeal that is different from that raised in the trial court. *In re J.C.*, 735 N.E.2d 848, 850 (Ind. Ct. App. 2000). Moriarty's business record argument is waived.

[36] On cross-appeal, West Morgan argues the trial court erred by considering Exhibit 10, which consisted of a spreadsheet of expenses, receipts for construction materials and construction work, and photographs of the interior of Davis' house. West Morgan claims Moriarty never asked the trial court to accept it as evidence. We agree. The parties and the trial court discussed Exhibit 10 but West Morgan never moved to have it admitted as evidence.

Moriarty notes his witness Michael discussed Exhibit 10 during an offer to prove. An offer to prove is an offer from counsel regarding what a witness would say if he or she was allowed to testify. *Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998). Such an offer is not the same as asking the court to accept an exhibit into evidence. To the contrary, an offer to prove presumes that an exhibit has already been offered and refused by the trial court.

[37] Even if Moriarty had asked that Exhibit 10 be admitted into evidence, West Morgan claims the trial court's consideration of that exhibit after the hearing deprived West Morgan of the opportunity to cross-examine Michael about the exhibit or to present rebuttal evidence. We agree. At trial, West Morgan had no reason to respond to Exhibit 10 because Moriarty was making a record for appeal through an offer to prove. West Morgan was thus denied an opportunity to cross-examine Michael about the preparation of the exhibit.

[38] If Exhibit 10 had been properly offered, the trial court could have acted within its discretion in admitting it into evidence. Under the circumstances presented in this case, the trial court abused its discretion by relying upon that exhibit. *See Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 929 (Ind. Ct. App. 2003) (trial court abused its discretion by considering evidence that had not been introduced or admitted at evidentiary hearing), *trans. denied*.

[39] Next, we must determine the impact of the erroneous consideration of Exhibit 10 on the trial court's judgment. When evidence is improperly admitted in a bench trial, it is presumed the trial court disregarded all inadmissible evidence

and weighed only the proper evidence in determining whether the claimant has carried the burden of proof. *Id.* The improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood the questioned evidence contributed to the judgment. *Id.*

[40] In this case, Exhibit 10 was one of only two exhibits cited by the trial court in awarding damages to Moriarty on his counterclaim, the other being a ledger prepared by Kennedy. The ledger, standing alone, does not support the trial court's award of damages. In addition, the court rejected other documents Michael discussed during his testimony. In the absence of Exhibit 10, the trial court's award lacks substantial independent evidence and the court's reliance upon that exhibit cannot have been harmless error. We reverse the trial court's judgment in favor of Moriarty on his counterclaim for construction costs and remand for a new evidentiary hearing limited to that counterclaim.

## III. Moriarty's Contract Claims

[41] Moriarty claims the trial court erred in concluding West Morgan paid Davis all amounts owed under Land Contracts I and II. West Morgan disagrees, asserting competent evidence demonstrates West Morgan fulfilled its contractual obligations.

[42] When the trial court holds a bench trial, the court may "find the facts and state its conclusions thereon" even if neither party requests it. Ind. Trial Rule 52(A).

In this case, the trial court issued findings of fact and conclusions thereon without a request from either party.

[43] On appeal from a bench trial, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* Findings are clearly erroneous if they are not supported by substantial evidence of probative value. *McKibben v. Hughes*, 23 N.E.3d 819, 825 (Ind. Ct. App. 2015), *trans. denied*. A judgment is clearly erroneous if it is unsupported by findings and conclusions. *Erie Ins. Exch. v. Sams*, 20 N.E.3d 182, 187 (Ind. Ct. App. 2014), *trans. denied*. In conducting our review, we consider only the evidence and reasonable inferences supporting the judgment and do not reweigh evidence or reassess the credibility of witnesses. *Id.*

[44] Pursuant to Land Contract I, West Morgan agreed to pay Davis $270,000 in monthly installments of $3,000, with the final payment due in December 2020. West Morgan had the option to pay more than $3,000 per payment. Pursuant to Land Contract II, West Morgan agreed to pay $150,000 in one payment.

[45] According to receipts admitted at trial, at the August 4, 2011 signing meeting West Morgan paid Davis $200,000 in cash, with $50,000 directed to Land Contract I and $150,000 directed to Land Contract II. In addition, Kennedy testified he had counted out $200,000 in cash the day before the meeting, and Cunningham testified he double-checked Kennedy's count on the morning of the meeting. Cunningham explained the money was put in envelopes and

Kennedy took the envelopes to the meeting room. After the meeting, Davis left with the envelopes.

[46] Subsequently, West Morgan paid Davis on a monthly basis, partially by check and partially in cash, and kept a receipt of each payment. For the first seventeen installment payments, West Morgan paid $10,000 in cash and $2,000 by check. Subsequent installment payments consisted of $1,000 in cash and $2,000 by check. Cunningham counted the cash that was included in the installment payments. Thus, properly admitted evidence establishes that the payments at the signing meeting, plus the installment payments, satisfied West Morgan's financial obligations to Davis under Land Contract I and Land Contract II.

[47] Moriarty argues the envelopes Davis received at the signing meeting were not large enough to contain $200,000. He further claims Davis never received the $10,000 cash installment payments, citing a certified fraud examiner's report and other evidence as proof Davis did not conduct her financial affairs during the installment payment period in a manner consistent with receiving large quantities of money. These arguments are requests to reweigh the evidence, which our standard of review forbids.

[48] Moriarty further claims the receipts are, by themselves, insufficient evidence to support the trial court's findings. He cites two cases, both of which are distinguishable. *Coca-Cola Bottling Co. v. Int'l Filter Co.*, 62 Ind. App. 421, 113 N.E. 17 (1916), concerned a receipt for the sale of goods. *Louisville N.A. & C.*

*Ry. Co. v. Hubbard*, 116 Ind. 193 (1888), involved a receipt for services rendered. The current case involves contracts for the sale of real estate. In any event, Kennedy and Cunningham's testimony is independent evidence that supports the receipts. There is sufficient evidence to support the trial court's findings of fact that West Morgan fully paid Davis pursuant to the Land Contracts.

## IV. Improvements to Real Estate

[49] The trial court determined Moriarty was entitled to $87,320.31 as compensation for funds Davis spent building a new house on the property. Moriarty argues the court's award is too low. On cross-appeal, West Morgan argues Moriarty is not entitled to any compensation at all. As noted above, we have determined the trial court's judgment as to construction costs must be reversed because it is not supported by properly admitted evidence, and a new evidentiary hearing must be held. We must still address West Morgan's cross-appeal claim because, if the claim has merit, then Moriarty's counterclaim fails and a new hearing is unnecessary. Our standard of review for the trial court's findings of fact and conclusions thereon is set forth in the previous section.

[50] Moriarty's claim for reimbursement is based on Indiana Code section 32-30-3.1-1 (2002), known as the Occupying Claimant's Statute:

> If an occupant of real property:
> (1) has color of title to the property;
> (2) in good faith has made valuable improvements to the property; and
> (3) after making improvements to the property is found, in a court action, not to be the rightful owner of the property;

an order may not be issued to give the plaintiff possession of the property until a complaint that meets the requirements of section 2 of this chapter has been filed and the provisions of this chapter are complied with.

[51] Indiana Code section 32-30-3.1-2 (2002) provides a complaint seeking compensation for improvements to the property must "(1) set forth the grounds on which the defendant seeks relief; and (2) state, as accurately as practicable, the value of the improvements on the real property and the value of the property without the improvements."  In his Amended Counterclaim to West Morgan's claim, Moriarty argued he was entitled to $138,000, plus interest, for Davis' construction expenditures.

[52] On cross-appeal, West Morgan asserts Moriarty is not entitled to compensation under Indiana Code section 32-30-3.1-1 because Davis did not have color of title when she made the improvements to the property.

[53] As defined by the General Assembly, an occupant has color of title to property for purposes of the Occupying Claimant's Statute if he or she "(1) can show a connected title in law or equity, derived from the records of any public office; or (2) holds the property by purchase or descent from a person claiming title derived from public records or by a properly recorded deed."  Ind. Code § 32-30-3.1-8 (2002).

[54] "Under a typical conditional land contract, the vendor retains legal title until the total contract price is paid by the vendee."  *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641, 646 (1973).  The vendee gains an equitable title to the

property at the time the contract is executed, and "all incidents of ownership accrue to the vendee," but the vendor reserves legal title as a security interest. *Id.*

[55] Land Contract I is the "typical conditional land contract" envisioned in *Skendzel*.[4] Pursuant to the contract, Davis granted West Morgan an immediate right to possess the property, subject to Davis' right to remain in her house as a lessee for three years. The contract did not require Davis to issue a warranty deed to West Morgan at the signing meeting, and the record does not demonstrate she issued a deed at the meeting or afterwards. On August 5, 2011, the day after the signing meeting, West Morgan recorded a "Memorandum of Land Contract" with the Morgan County Recorder rather than a deed. Petitioner's Exhibit D.

[56] The plain language of Land Contract I demonstrates Davis retained legal title to the land until West Morgan paid all installments in full. Furthermore, Kennedy agreed at trial West Morgan had possession of the land but not "the title." Tr. Vol. I, p. 82.

[57] West Morgan cites *Kolley v. Harris*, 553 N.E.2d 164 (Ind. Ct. App. 1990), *trans. denied*, for the principle that the Occupying Claimant's Statute is inapplicable to conditional land contracts. We disagree with West Morgan's reading of the case. In *Kolley*, a panel of this Court determined the vendees of a conditional

---

[4] As discussed above, West Morgan fulfilled its obligations under Land Contract II on the day of the signing meeting by paying the contract price in full.

land contract did not have a cause of action under the Occupying Claimant's Statute because the vendees' equitable interest in the property was defeasible if they breached the contract. *Id.* at 168. The Court concluded the vendees' defeasible title was insufficient to establish color of title. By contrast, in the current case Davis, the vendor, retained legal title during the period in which West Morgan, the vendee, made installment payments. As a result, Davis had color of title to the property during the period she made improvements to the property.

[58] We need not address Moriarty's claim that the trial court's award of damages is too low. Moriarty argues in the alternative that he is entitled to recover Davis' construction costs under a theory of unjust enrichment, and the trial court should have allowed him to present that theory. He did not assert unjust enrichment in his Counterclaim or Amended Counterclaim. Instead, during the bench trial on June 9, 2015, Moriarty moved to amend the pleadings to add a claim of unjust enrichment. West Morgan objected, and the trial court denied Moriarty's motion, explaining it was "too late to do that, we don't play that game." Tr. Vol. II p. 62.

[59] We review a trial court's ruling on a motion to amend the pleadings to conform to the evidence for an abuse of discretion. *Woodward v. Heritage Constr. Co., Inc.*, 887 N.E.2d 994, 998 (Ind. Ct. App. 2008). Pursuant to Indiana Trial Rule 15(B), "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Amendments of the pleadings to conform to the

evidence are permissible only when the parties have consented to and litigated issues not originally raised by the pleadings. *Woodward*, 887 N.E.2d at 999. Such amendments are not a procedural tool to reopen litigation. *Id.*

[60] In this case, Moriarty waited until the second day of trial, almost a year after he had filed his original Counterclaim, to attempt to plead unjust enrichment in connection with his claim for reimbursement of construction costs. West Morgan objected to Moriarty's motion to amend and thus did not consent to try a claim of unjust enrichment. The trial court did not abuse its discretion in denying Moriarty's motion to amend the pleadings. As a result, a claim of unjust enrichment was not properly presented to the trial court, and we may not reverse the trial court's judgment based on improperly plead claims.

## V. Personal Jurisdiction

[61] On cross-appeal, West Morgan notes the trial court's final judgment directed John Kennedy, not West Morgan, to pay $87,320.31 to Moriarty on his counterclaim for unreimbursed construction costs under the Occupying Claimant's Statute. West Morgan claims Kennedy was never a party to this case, and the trial court lacked personal jurisdiction over him. Moriarty concedes Kennedy was not a party to the case.

[62] We are reversing the trial court's judgment for Moriarty on his counterclaim for construction costs, so the question of whether the court erred by ordering Kennedy to pay Moriarty is moot. Because the parties agree that Kennedy is

not a party to the case, any subsequent judgment in favor of Moriarty must be entered against West Morgan, not Kennedy.

## VI. Attorney's Fees

[63] On cross-appeal, West Morgan claims the trial court should have granted its request for attorney's fees because the trial court rejected Moriarty's fraud claim. West Morgan asserts the fraud claim was frivolous, groundless, and unreasonable and that Moriarty litigated in bad faith. The statute governing attorney's fees provides, in relevant part:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

Ind. Code § 34-52-1-1 (1998).

[64] Where, as here, the trial court determines attorney's fees are not warranted under the statute permitting the award of attorney fees for bringing or pursuing a frivolous claim, we review the determination de novo. *Stephens v. Parkview Hosp., Inc.*, 745 N.E.2d 262, 267 (Ind. Ct. App. 2001).

[65] West Morgan asserts Moriarty presented no evidence in support of his fraud claim. This assertion is incorrect. First, Moriarty presented testimony from the notary public who attended the signing meeting. She described the thickness of

the envelopes Davis received from Kennedy during the meeting, and, based on her testimony, Moriarty argued the envelopes were too small to have contained $200,000 in cash. Second, Moriarty presented a certified fraud examiner's report and testimony in an attempt to demonstrate that, regardless of what the installment payment receipts indicated, Davis was not managing her finances in a manner consistent with receiving large amounts of cash. Specifically, during the times when she was receiving installment payments, she cashed in life insurance policies and other investments. This evidence did not convince the trial court to rule in Moriarty's favor on his claims for fraud and payment under the land contracts, but we cannot conclude the claims were so lacking in evidentiary support as to be frivolous, unreasonable, or groundless. *See id.* (no error in denial of attorney's fees where the losing party submitted evidence in support of its unsuccessful claims).

[66] West Morgan also claims it is entitled to attorney's fees due to Moriarty's conduct on appeal, asserting he continues to present frivolous, groundless, and unreasonable claims. We may assess damages on appeal, including attorney's fees, "if an appeal, petition, or motion, or response, is frivolous or in bad faith." Ind. Appellate Rule 66(E). We will only assess damages where an appellant, acting in bad faith, maintains a wholly frivolous appeal. *Fritts v. Fritts*, 28 N.E.3d 258, 267 (Ind. Ct. App. 2015).

[67] The trial in this case involved complex evidentiary issues arising from a property transaction that was structured in an unusual manner. Under these circumstances, Moriarty's appellate claims, although entirely unsuccessful,

were not presented in bad faith and are not frivolous. We deny West Morgan's request for appellate attorney's fees.

# Conclusion

[68] The trial court abused its discretion by relying upon Exhibit 10, and the case must be remanded for a new evidentiary hearing limited to Moriarty's counterclaim for construction costs under the Occupying Claimant's Statute. The trial court did not otherwise err. For the reasons stated above, we affirm the judgment in part, reverse in part, and remand with instructions.

[69] Affirmed in part, reversed in part, and remanded with instructions to hold an evidentiary hearing limited to Moriarty's counterclaim for construction costs.

Bailey, J., and Crone, J., concur.